Peter C. Lewis, Esq.
Adorno Yoss White &Wiggins, L.L.P.
901 Main Street, Suite 6200
Dallas, Texas 75202
Telephone: (214) 665-4150
Facsimile: (214) 665-4160

Steven B. Soll, Esq.
Otterbourg, Steindler, Rosen & Houston, P.C.
230 Park Avenue
New York, New York 10169
Telephone: 212-661-9100
Facsimile: 212-682-6104

Attorneys for Federal Deposit Insurance Corporation,
as Receiver for Guaranty Bank

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| GUARANTY FINANCIAL GROUP INC., | § | CASE NO. 09-35582-bjh |
| *et al.*, | § | (Jointly Administered) |
| | § | |
| Debtors. | § | Preliminary Hearing Date/Time: February 23, 2010 at 1:15 p.m. |

**MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR GUARANTY BANK, FOR AN ORDER
MODIFYING THE AUTOMATIC STAY AS TO PROPERTY
AND GRANTING SETOFF BY THE FDIC-RECEIVER**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

THE TRUSTEE (IF ONE HAS BEEN APPOINTED) OR THE DEBTOR SHALL FILE A RESPONSE TO ANY MOTION FOR RELIEF FROM THE AUTOMATIC STAY WITHIN 14 DAYS FROM THE SERVICE OF THE MOTION. THE DEBTOR'S RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED. IF THE DEBTOR DOES NOT FILE A RESPONSE AS REQUIRED, THE ALLEGATIONS IN THE CREDITOR'S MOTION FOR RELIEF

**FROM THE AUTOMATIC STAY SHALL BE DEEMED ADMITTED, UNLESS GOOD CAUSE IS SHOWN WHY THESE ALLEGATIONS SHOULD NOT BE DEEMED ADMITTED AND AN ORDER GRANTING THE RELIEF MAY BE ENTERED BY DEFAULT.**

COMES NOW, the Federal Deposit Insurance Corporation, in its capacity as receiver for Guaranty Bank (the "FDIC-Receiver"), and pursuant to 11 U.S.C. §§ 362(d) and 553 and Local Bankruptcy Rule 4001.1 respectfully submits its Motion of the Federal Deposit Insurance Corporation as Receiver for Guaranty Bank, for an Order Modifying the Automatic Stay and Granting Setoff by the FDIC-Receiver (the "Motion") in the chapter 11 cases of Guaranty Financial Group Inc. ("GFG"), Guaranty Group Ventures Inc. ("GGVI"), Guaranty Holdings Inc. I ("GHI") and Guaranty Group Capital Inc. ("GGCI" and, collectively with GFG, GGVI and GHI, the "Debtors"), to permit the FDIC-Receiver to exercise its setoff rights against the balances held in certain deposit accounts at Guaranty Bank that were in existence on the date the Debtors' cases were commenced. In support of the Motion, the FDIC-Receiver respectfully states:

## PRELIMINARY STATEMENT

1. On August 21, 2009, the FDIC-Receiver was appointed receiver of Guaranty Bank when that bank was closed by its primary regulator, the Office of Thrift Supervision ("OTS"). The Guaranty Bank receivership was one of the largest United States bank failures in 2009 - and may result in claims by the FDIC-Receiver against the Debtors estimated at $1,977,849,611.

2. By operation of law, the FDIC-Receiver succeeded to the rights, titles, powers and privileges of Guaranty Bank, *see* 12 U.S.C. § 1821(d)(2)(A), and it is empowered, among other things, to take over the assets of and operate that institution, collect all obligations and

money due the institution, preserve and conserve the assets and property of the institution and place the institution in liquidation and proceed to realize upon its assets. *See* 12 U.S.C. §§ 1821(d)(2)(D) and (E).

3. In this instance, the assets of Guaranty Bank include substantial obligations that are owed to it by one or more of the Debtors, including an uncured deficit of at least $1,953,579,400 that is owed by its ultimate parent, GFG, under a capital maintenance commitment that was deemed to have been assumed as a condition to GFG obtaining relief under Chapter 11 pursuant to 11 U.S.C. § 365(o).[1] The FDIC-Receiver's claim arising from GFG's post petition failure to cure such deficit is entitled to administrative claim status or, alternatively, is entitled to priority under 11 U.S.C. § 507(a)(9). In addition to the FDIC-Receiver's claims under 11 U.S.C. § 365(o) and § 507(a)(9), the FDIC-Receiver has substantial additional claims against the Debtors, as are more specifically set forth in the Proofs of Claims filed by the FDIC-Receiver against GFG, GHI, GGVI and GGCI (GFG Claim No. 143, GHI Claim No. 2, GGVI Claim No. 3 and GGCI Claim No. 2), respectively, each of which is incorporated by reference as if fully set forth herein. *See* Exh. A, Declaration of Steven B. Soll, Esq. ("Soll Decl."), Exhs. "1" - "4".

4. The FDIC-Receiver therefore seeks an order modifying the automatic stay provided under section 362 of Title 11 of the U.S. Code (the "Bankruptcy Code") to permit it to enforce its setoff rights pursuant to section 553 of the Bankruptcy Code under applicable non-bankruptcy law with respect to certain funds held in the Debtors' accounts at Guaranty Bank on

---

[1] *See* 11 U.S.C. § 365(o) (debtor shall be "deemed to have assumed" and "shall immediately cure any deficit under any commitment by the debtor to a Federal depository institutions regulatory agency . . . to maintain the capital of an insured depository institution . . .").

the Petition Date (defined below) in order to make those funds available for distribution to the creditors of Guaranty Bank through the receivership process.

**JURISDICTION AND VENUE**

5. Pursuant to the Debtors' *Motion For Order Implementing the Requirements of § 345(b) of the Bankruptcy Code and the Region VI, Northern District of Texas, Guidelines for Chapter 11 Debtors-in-Possession* (the "345 Motion") [Dkt. No. 7], this Court entered an *Order Implementing the Requirements of § 345(B) of the Bankruptcy Code and the Region VI, Northern District of Texas, Guidelines for Chapter 11 Debtors-in-Possession* on September 3, 2009 [Dkt. No. 47] (the "345 Order") pursuant to which the Debtors were authorized to transfer certain bank accounts previously maintained by the Debtors at Guaranty Bank to Bank of America, N.A. The 345 Order specifically provided that the transfer of the Accounts was "...without prejudice to the rights of the FDIC to assert an interest or claim in such funds, including a claim to setoff or recoupment, if any, or to assert that such funds are not property of the Debtors' estates . . ." (a "Challenge"). The 345 Order further provided that a Challenge must be brought in the Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") and that the Bankruptcy Court retains jurisdiction to hear and determine all matters arising from the implementation of the 345 Order.[2]

---

[2] Except to the extent set forth in the 345 Order, under 12 U.S.C. § 1821(j), "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." Section 1821(j) "effect[s] a sweeping ouster of courts' power to grant equitable remedies" that would frustrate the FDIC's exercise of its statutory powers as receiver or conservator. *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995); *see RPM Investments, Inc. v. R.T.C.*, 75 F.3d 618, 622 (11th Cir. 1996) (*per curiam*); *Gross v. Bell Sav. Bank*, 974 F.2d 403, 408 (3d Cir. 1992) (reversing injunction directing RTC to release deposit funds that were withheld pursuant to 12 U.S.C. § 1822(d)). With respect to matters not governed by the 345 Order, the FDIC-Receiver reserves all of its jurisdictional arguments, under section 1821(j) or otherwise. *See also* 12 U.S.C. § 1821(d) (13) (D) (in connection with statutory provisions setting forth receivership claims process, providing that "no court shall have jurisdiction" over specified claims or actions).

6. Subject to the provisions of 12 U.S.C. § 1821(j) and (d), subject matter jurisdiction for the Motion arises under 28 U.S.C. § 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b) (2). Venue for the Motion is proper in this district under 28 U.S.C. § 1409.

**BACKGROUND**

A. **The Debtors' Chapter 11 Cases and the Guaranty Bank Receivership.**

7. By order of the OTS dated August 21, 2009, Guaranty Bank was closed and the FDIC-Receiver was appointed as its receiver. That day, the FDIC-Receiver entered into a Purchase and Assumption Agreement with BBVA Compass, Birmingham, Alabama ("BBVA Compass"), under which BBVA Compass purchased certain assets and assumed certain liabilities of Guaranty Bank from the FDIC-Receiver (the "P&A Agreement").[3]

8. Guaranty Bank was a wholly-owned savings association subsidiary of GHI, a Delaware corporation, that served as the holding company for GFG's investment in Guaranty Bank. On August 27, 2009 (the "Petition Date"), GFG, GHI and GFG's wholly-owned subsidiaries, GGVI and GGCI, each filed voluntary cases under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases"). The Debtors continue as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code but currently have no business operations or prospects of generating future revenue or reorganizing.

9. No trustee, examiner or committee of unsecured creditors has been appointed in the Bankruptcy Cases.

---

[3] *See* http://www.fdic.gov/bank/individual/failed/Guaranty--tx.html_P_and-A.pdf for a publicly available copy of the P&A Agreement.

1491694.4
5

B. **The Accounts.**

10. In its 345 Motion, the Debtors identified six bank accounts at Guaranty Bank that they assert are demand deposit accounts in one of their names that they wished to transfer to Bank of America, N.A., in order to comply with the requirements of 11 U.S.C. § 345(b) and the Region VI, Northern District of Texas Guidelines for Chapter 11 Debtors, as follows:

| **Account Owner** | **Account No.** | **Account Balance as of 8/20/09** |
|---|---|---|
| GFG | 3805973322 | $8,943,996.00 |
| GFG | 8306138321 | $502,419.00 |
| GFG | 3801151386 | $1,793,753.00 |
| Total GFG Account Balance | | $11,240.168.00 |
| | | |
| GGCI | 3805973314 | $4,170,395.00 |
| GGVI | 4440330381 | $6,142,859.00 |
| GGVI | 3805973298 | $112,392.00 |
| Total Affiliated Debtor Account Balance | | $10,425,646.00 |

11. Based upon the foregoing, as of August 20, 2009, the Debtors maintained aggregate balances in the accounts of $21,665,814, consisting of $11,240,168 in accounts which GFG is designated as the account "owner" (the "GFG Accounts") and $10,425,646 in the accounts in the name of debtors other than GFG (the "Affiliates' Accounts" and, collectively with the GFG Accounts, the "Accounts"). On the Petition Date, and until the transfer of the Accounts to Bank of America, N.A. pursuant to the 345 Order, the Accounts were subject to the control of the FDIC-Receiver. Under the P&A Agreement, the definition of "Assumed Deposit" and "Deposit"

shall not include all or any portion of those deposit balances which, in the discretion of the Receiver or Corporation... (ii) may be needed to provide payment of any liability of any depositor of the Failed Bank or the Receiver, including the liability of any depositor as a director or officer of the Failed Bank, whether or not the amount of liability is or can be determined as of Bank Closing.

*See* P&A Agreement at p. 4. Moreover, pursuant to section 9.5 of the P&A Agreement, the FDIC-Receiver controlled the Accounts[4] and, upon entry of the 345 Order, instructed BBVA Compass to transfer the funds in the Accounts to accounts at Bank of America, N.A. (collectively, the "DIP Accounts") with the full reservation of all of the FDIC-Receiver rights in and to the DIP Accounts.

### C. The FDIC-Receiver's Claims Against the GFG Accounts.

12. On January 28, 2010, the FDIC-Receiver filed a proof of claim in GFG's bankruptcy case (the "GFG Proof of Claim"). Soll Decl., Exh. "1".[5] In the GFG Proof of Claim, the FDIC-Receiver expressly reserved the FDIC-Receiver's setoff rights against the GFG DIP Accounts. The FDIC-Receiver's claims against GFG remain outstanding. Those claims include,

---

[4] Section 9.5 of the P&A Agreement provides, in pertinent part:

> At any time, the Receiver or the Corporation may, in its discretion, determine that all or any portion of any deposit balance assumed by the Assuming Bank pursuant to this Agreement does not constitute a "Deposit" (or otherwise, in its discretion, determine that it is in the best interest of the Receiver or Corporation to withhold all or any portion of any deposit), and may direct the Assuming Bank to withhold payment of all or any portion of any such deposit balance. Upon such direction, the Assuming Bank agrees to hold such deposit and not to make any payment of such deposit balance to or on behalf of the depositor, or to itself, whether by way of transfer, set-off, or otherwise. The Assuming Bank agrees to maintain the "withheld payment" status of any such deposit balance until directed in writing by the Receiver or the Corporation as to its disposition. At the direction of the Receiver or the Corporation, the Assuming Bank shall return all or any portion of such deposit balance to the Receiver or the Corporation, as appropriate, and thereupon the Assuming Bank shall be discharged from any further liability to such depositor with respect to such returned deposit balance . . . .

P&A Agreement, § 9.5.

[5] The GFG Proof of Claim expressly reserved all of the FDIC-Receiver's jurisdictional defenses.

among others: (i) amounts aggregating approximately $1,953,579,400[6] arising from GFG's failure to immediately cure at the commencement of the Bankruptcy Cases the deficit under its commitment to a Federal regulatory agency to maintain the capital of Guaranty Bank, as GFG is required to do pursuant to 11 U.S.C. § 365(o), the failure of which gives rise to an administrative claim by the FDIC-Receiver against GFC or, alternatively, to priority pursuant to 11 U.S.C. § 507, (ii) amounts aggregating not less than $1,200,000 including, but not limited to, tax refunds to be received in an amount not less than approximately $880,000 or such higher amounts as may be remitted by the Internal Revenue Service in connection with the filing of amended federal tax returns and such additional undetermined amounts received or to be received from the taxing authorities in other jurisdictions, including various states,[7] plus the Affiliated Debtors' obligations to the FDIC-Receiver based upon their receipt of tax refunds aggregating $275,667 based upon Guaranty Bank's net operating losses, (iii) an unsecured claim for intercompany charges owed by GFG to Guaranty Bank in an undetermined amount, but not less than $241,010, (iv) recoveries from insurance policies in an unliquidated and contingent amount and unearned premium refund, in the approximate amount of $1,139,555 for various insurance policies which

---

[6] This number was calculated using statistics provided in the Consolidated Capital Requirement Schedule of the Guaranty Bank Thrift Financial Report (the "Guaranty Bank TFR") for the quarter ending June 30, 2009. (A copy of the Office of Thrift Supervision's 2009 Thrift Financial Report, Schedule-CCR Consolidated Capital Requirement for Guaranty Bank for quarter ending June 30, 2009 is annexed as Exhibit "5" to the Soll Decl.) This information is publicly available on the Federal Financial Institutions Examination Council (FFIEC) website at https://cdr.ffiec.gov/public/. The amount of capital required to meet the 8% Tier 1 leverage capital ratio that Guaranty Bank was required to maintain is determined by multiplying the bank's total assets by .08. The shortfall from this capital level is then determined by subtracting Guaranty Bank's reported Tier 1 leverage capital from the product of this equation. Using the financial information reported in the Guaranty Bank TFR for the quarter ending June 30, 2009, the calculation is as follows: ($12,926,305,000 * .08) = $1,034,104,400 - (- $919,475,000) = $1,953,579,400.

[7] It is the FDIC-Receiver's position that these refunds are property of the FDIC-Receiver and not property of GFG's estate. Notwithstanding the FDIC-Receiver's position, if a Court were to hold that less than all of such monies belonged to the FDIC-Receiver, the FDIC-Receiver asserts a claim to its share of the tax refunds on behalf of the Receivership in whatever monies are held to be property of GFG's estate.

were cancelled as of, or subsequent to, the date of the Receivership,[8] (v) fraudulent conveyance claims, if any, and (vi) unliquidated, contingent claims.[9]

### D. The FDIC-Receiver's Claims Against the Affiliates Accounts.

13. On January 28, 2010, the FDIC-Receiver filed a Proof of Claim against each of GHI, GGVI and GGCI (the "Affiliates' Proofs of Claim"). Soll Decl., Exhs. "2" - "4".[10] In the Affiliates' Proofs of Claim, the FDIC-Receiver expressly reserved the FDIC-Receiver's setoff rights against any of the Debtors' interest in the DIP Accounts. The FDIC-Receiver's claims against the GGVI, GGCI and GHI remain outstanding. In each of the Affiliates' Proofs of Claim the FDIC-Receiver asserts that GFG is indebted to the FDIC-Receiver for the obligations more specifically set forth above. Moreover, in the Affiliates' Proofs of Claim the FDIC-Receiver asserts that each of GGVI, GGCI and GHI are or may be jointly and severally liable to the FDIC-Receiver based upon the FDIC-Receiver's ongoing investigation of the books and records and financial affairs of Guaranty Bank and the Debtors and/or on the basis of the FDIC-Receiver's reservation of rights to assert claims under the theory of substantive consolidation or other remedy at law or equity.

---

[8] It is the FDIC-Receiver's position that these monies are property of the FDIC-Receiver and not property of GFG's estate. Notwithstanding the FDIC-Receiver's position, if a Court were to hold that less than all of such monies belong to the FDIC-Receiver, the FDIC-Receiver asserts a claim to its share of the insurance proceeds and refunds on behalf of the Receivership in whatever monies are held to be property of GFG's estate.

[9] The FDIC-Receiver's investigation into the financial affairs of Guaranty Bank and the Debtors remains ongoing and the FDIC-Receiver has reserved its rights to amend the proofs of claim that it has filed against each of the Debtors. To the extent GFG and GHI assert claims against the FDIC-Receiver in the Receivership, the FDIC-Receiver reserves all of its jurisdictional and substantive defenses to any such claims. However, to the extent one or more of such claims may be upheld, the FDIC-Receiver may have the right, pursuant to 11 U.S.C. § 502(h) or otherwise, to assert claims against one or more of the Debtors. Such claims would constitute obligations due and owing by such Debtors to the FDIC-Receiver that would provide additional bases for setoff against the Accounts.

[10] The Affiliates Proof of Claim expressly reserves all of the FDIC-Receiver's jurisdictional defenses.

**RELIEF REQUESTED**

14. By this Motion, the FDIC-Receiver seeks an order pursuant to 11 U.S.C. §§ 362(d) and 553 modifying the automatic stay to enforce the FDIC-Receiver's setoff rights against the funds held in the DIP Accounts in partial satisfaction of the FDIC-Receiver claims.

**ARGUMENT**

**THE FDIC-RECEIVER IS ENTITLED TO MODIFICATION OF THE AUTOMATIC STAY TO ENFORCE ITS SETOFF RIGHTS**

15. The automatic stay should be modified to permit the FDIC-Receiver to exercise its setoff rights pursuant to non-bankruptcy law.

**A.    The FDIC-Receiver Has Valid Setoff Rights.**

16. The FDIC-Receiver has valid setoff rights pursuant to federal statutes and common law, as recognized under section 553 of the Bankruptcy Code.

17. "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995). The Bankruptcy Code does not disturb a creditor's right to setoff if such right arose under non-bankruptcy law prior to the filing of a petition. *See* 11 U.S.C. § 553(a) (Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against the claim of such creditor that arose before the commencement of the case").

18. There is "practically a presumption in favor of allowing setoff" where such rights exist under applicable non-bankruptcy law. *Carlton Co. v. Jenkins (In re Jenkins)*, No. 0360548,

2004 WL 768574, at* 2 (Bankr. S.D. Ga. Mar. 30, 2004) (citing *S.E.C. v. Elliott*, 953 F.2d 1560, 1572 (11th Cir. 1992)).[11] The FDIC-Receiver is entitled to setoff against the funds in the DIP Accounts on two different grounds under non-bankruptcy law.

19.     First, 12 U.S.C. § 1822(d) provides the FDIC-Receiver with a statutory right of setoff against any portion of a depositor's insured deposits with a failed bank to the extent required "to provide for the payment of any liability of [the] depositor to the" failed institution.[12] *See Villafane Neris v. Citibank*, 845 F. Supp. 930, 934 (D. P.R. 1994); *see also Gross, supra*, 974 F.2d at 408; *Northern Trust Co. v. F.D.I.C.*, 619 F. Supp. 1340, 1342 (W.D. Okla. 1985).

20.     The accounts at issue here are insured deposits that are subject to the FDIC-Receiver's setoff rights under section 1822(d). While the standard maximum deposit insurance amount currently is $250,000, s*ee* 12 C.F.R. § 330.1(n), under FDIC temporary regulations this deposit insurance limit does not apply to "a depositor's funds in a non-interest-bearing transaction account maintained at a participating entity that is an insured depository institution..." 12 C.F.R. § 370.4(a). The accounts at issue here fall within this exception.

21.     Second, the FDIC-Receiver is entitled to setoff under applicable state law. Under Texas law:

---

[11] For the convenience of the Court, a copy of the *Carlton* decision is annexed to the Soll Decl. as Exh. "6".

[12] Section 1822(d) provides:

> The [FDIC] may withhold payment of such portion of the insured deposit of any depositor in a depository institution in default as may be required to provide for the payment of any liability of such depositor to the depository institution in default or its receiver, which is not offset against a claim due from such depository institution, pending the determination and payment of such liability by such depositor or any other person liable therefor.

12 U.S.C. § 1822(d).

> Normally, funds deposited with a bank are general deposits which create a debtor-creditor relationship between the bank and its depositor. *Citizens Nat'l Bank of Dallas v. Hill*, 505 S.W.2d 246, 248 (Tex. 1974); *In re Goodson Steel Corp.*, 488 F.2d 776, 779 (5th Cir. 1974). When the bank and its depositor stand in this relationship, the bank has a right to setoff funds in the general account against indebtedness due from the depositor. *See* 11 U.S.C. § 553 (1979); *Western Shoe v. Amarillo Int'l Bank*, 94 S.W.2d 125 (Tex. 1936).

*In the Matter of Texas Mortgage Services Corporation,* 761 F.2d 1068 (5th Cir. 1985).

22. Exercise of the FDIC-Receiver's setoff rights here meets the requirements set forth in section 553 of the Bankruptcy Code, which provides that, with certain exceptions not applicable here, a right to setoff otherwise existing under non-bankruptcy law is preserved in bankruptcy where: (1) a creditor holds a prepetition claim against the debtor; (2) the creditor owes a prepetition debt to the debtor; (3) the claim and the debt are mutual; and (4) the claim and the debt are valid and enforceable. 11 U.S.C. § 553; *see In Davidovich v. Welton*, 901 F.2d 1533 (5th Cir. 1990); *In re Nase*, 297 B.R. 12, 19 (Bankr. W.D. Pa. 2003).

23. All of these criteria are satisfied. Both the deposit liabilities allegedly owed to the Debtors and the Debtors' substantial obligations to the FDIC-Receiver arose prepetition.[13] The amount of the FDIC-Receiver's claims against the Debtors far exceeds the total balance in the DIP Accounts, and there can be no genuine dispute that the Debtors' obligations to Guaranty Bank and the FDIC-Receiver are valid and enforceable.[14] The mutuality requirement is also

---

[13] GFG entered into its capital maintenance commitment prior the Petition Date. By operation of law, GFG was deemed to have assumed its prepetition capital maintenance commitment as a condition to obtaining relief under Chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 365(o); *R.T.C. v. FirstCorp., Inc. (In re FirstCorp., Inc.)*, 973 F.2d 243, 247 (4th Cir. 1992). For purposes of setoff analysis, however, the fact that GFG is now obligated to cure its commitment as a post-petition obligation is not relevant. "[A] debt arises pre-petition for set-off purposes when some 'right to payment' exists prepetition; that is, when an enforceable obligation exists at the time the debtor files his bankruptcy petition." *United States v. Myers (In re Myers)*, 362 F.3d 667, 673 (10th Cir. 2004) (citation omitted). *See also United States v. Gerth*, 991 F.2d 1428, 1432 (8th Cir. 1993) (amounts owed under prepetition contract assumed by debtor postpetition could be setoff against prepetition debts). GFG's capital maintenance commitment here arose prepetition for purposes of setoff.

[14] Section 553 of the Bankruptcy Code authorizes setoff even when a creditor's claim is unliquidated,

satisfied because each of the Debtors owes debts to the FDIC-Receiver and, with the exception of GHI, simultaneously holds a claim against the FDIC-Receiver in connection with the monies transferred into the DIP Accounts.

24. Under section 553(a) of the Bankruptcy Code, the FDIC-Receiver is entitled to setoff against the entire balances in the DIP Accounts and the payment of such balances to the FDIC-Receiver pursuant to the terms of the 345 Order. Given the substantial amounts owed by the Debtors, a substantial deficiency will still be owed to the FDIC-Receiver on the Debtors' obligations after such setoff and remittance.

### B. Cause Exists to Modify the Automatic Stay.

25. Cause exists for modification of the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code in order to permit the FDIC-Receiver to exercise its setoff rights against the funds in the DIP Accounts.

26. Because the automatic stay in bankruptcy applies to "the setoff of any debt owing to the debtor that arose before commencement of the case under this title against any claim against the debtor," a creditor must seek relief from the stay in order to exercise its setoff rights. 11 U.S.C. § 362(a)(7). Section 362(a)(7), however, "simply stays [a creditor's] enforcement [of setoff] pending an orderly examination of the debtor's and creditors' rights." H.R. Rep. No. 595, 95th Cong., 1st Sess., at 342 (1977); S. Rep. No. 989, 95th Cong., Sess., at 51 (1978). Thus, a party may assert its right of setoff in a bankruptcy proceeding but must first obtain relief from the automatic stay or obtain an order allowing setoff. *In re NTG Indus., Inc*., 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989) (citations omitted). "[T]he stay is not meant to be indefinite or absolute,

---

unmatured or even contingent. *See, e.g., Braniff Airways v. Exxon Co.*, 814 F.2d 1030, 1035 (5th Cir. Tex. 1987). Once some definite liability has accrued, setoff is proper. *In re Rozel Industries, Inc.*, 120 B.R. 944, 949 (Bankr. N.D. Ill. 1990); *In re Glenn*, 207 B.R. 419 (Bankr. E.D. Pa. 1997).

and in appropriate instances, relief may be granted." *Izzarelli v. Rexent Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Wedgewood Inv. Fund Ltd. v. Wedgewood Realty Group Ltd. (In re Wedgewood)*, 878 F.2d 693, 697 (3d Cir. 1989)).

27. Under section 362(d)(1) of the Bankruptcy Code, the Court shall grant relief from the automatic stay "for cause, including lack of adequate protection of any interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Courts generally recognize that once a creditor has established a right of setoff, it has made a prima facie showing of "cause" for relief from the automatic stay under section 362(d)(1). *In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008); *In re Orlinski*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991); *see also U.S. v. Gould*, 401 B.R. 415, 426 (9th Cir. B.A.P. 2009); *In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000). The right of setoff is the right not to part with one's own funds. *Strumpf, supra*, 516 U.S. at 21. While a right of setoff is sometimes analogized to a security interest, a creditor holding a right of setoff is said to be "the best secured of creditors" because his "security" is "his own justified refusal to pay[.]" *United States v. Monsey Trust Co.*, 332 U.S. 234, 240 (1947). The 345 Order preserved these rights and claims on behalf of the FDIC-Receiver, notwithstanding the transfer of the funds to the DIP Accounts.

28. Thus, in the absence of a showing of adequate protection, the creditor is entitled to relief from the automatic stay to exercise its setoff rights. *See In re George Ruggeri Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984); *In re Blanton*, 105 B.R. 321, 337 (Bankr. E.D. Va. 1989). Under the Bankruptcy Code, adequate protection is a form of relief afforded to creditors whose interest in the debtor's property is such that the passage of time or continuation of the debtor's business could cause prejudice to the creditor. *See, e.g., In re Engle*, 93 B.R. 58, 61 (E.D. Pa. 1987). Adequate protection is provided as an alternative to relief from the automatic

stay and, conversely, relief from the automatic stay is justified where a lack of adequate protection exists. In short, adequate protection compensates a creditor for forebearing on its right to seek relief from the stay. *Id*. The purpose of adequate protection is to insure the creditor receives the value for which he bargained before the debtor's bankruptcy. *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Grant Broadcasting of Philadelphia, Inc*., 71 B.R. 376, 386 (Bankr. E.D. Pa.), *affd*, 75 B.R. 819 (E.D. Pa. 1987).

29. Here, the FDIC-Receiver has received nothing in the way of adequate protection, either in the form of cash payments, a replacement lien, or other "indubitable equivalent." Relief from the automatic stay therefore is necessary and appropriate. Continuation of the automatic stay, on the other hand, would provide little or no benefit to the Debtors, their estates or creditors and is far outweighed by the benefit that modification of the stay would provide to the FDIC-Receiver. *See In re King*, No. 08-10892, 2008 Bankr. LEXIS 1983 (Bankr. N.D. Ga. May 29, 2008)[15] (allowing modification of stay to permit setoff where turnover of funds could not be granted because it would destroy right to setoff and leaving stay in place would accomplish nothing). Given the FDIC-Receiver's right to setoff under both federal and state law, the FDIC-Receiver respectfully submits that it has met its initial burden of establishing cause for relief from the stay.

30. Modification of the stay also is warranted under section 362(d)(2) of the Bankruptcy Code, which permits modification of the stay "if - (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). Relief from the automatic stay should be granted under section 362(d)(2)

---

[15] For the convenience of the Court, a copy of the *King* decision is annexed to the Soll Decl. as Exh. "7".

where the amount of a debtor's obligation to a creditor requesting relief exceeds the value of collateral securing those debts. *In re Sunshine Books, Ltd.*, 41 B.R. 712 (Bankr. E.D. Pa. 1984).

31. "Once the movant under 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is "necessary to an effective reorganization." See 11 U.S.C. § 362(g); *see also United Sav. Assoc. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988).

32. Courts have interpreted the term "equity" to refer to the difference between the value of the property and all encumbrances against it. *See, e.g., Nantucket Investors II v. California Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 207 (3d Cir. 1995). In the instant case, the Debtors do not have any equity in the DIP Accounts since the amount owed to the FDIC-Receiver of more than $1,977,849,611 far exceeds the balances in the DIP Accounts of less than $21.6 million.

33. Further, the funds in the DIP Accounts are not necessary for an effective reorganization because GFG has shown no ability to cure the outstanding deficit under its capital maintenance commitment or to otherwise reorganize. *See Wolkowitz v. Imperial Credit Indus., Inc (In re Imperial Credit Indus., Inc.)*, 527 F.3d 959, 975 (9th Cir. 2008); *O.T.S. v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1253 (10th Cir. 2001); *FirstCorp.*, *supra*, 973 F.2d at 247.[16]

## CONCLUSION

34. For the foregoing reasons, the FDIC-Receiver respectfully submits that it is

---

[16] The FDIC-Receiver reserves all of its rights under section 365(o) of the Bankruptcy Code, including its right to move to compel GFG to cure the substantial deficit existing under its capital maintenance commitment or, failing such cure, to convert this case to a liquidation under Chapter 7 of the Bankruptcy Code.

1491694.4 16

entitled to relief from the stay pursuant to Bankruptcy Code section 362(d) to allow the FDIC-Receiver to exercise its setoff rights under applicable non-bankruptcy law and remittance of the funds in the DIP Accounts to the FDIC-Receiver pursuant to the 345 Order.

WHEREFORE, the FDIC-Receiver respectfully requests that this Court enter an order in the form attached hereto as Exhibit "B" modifying the automatic stay to permit the FDIC-Receiver to exercise its setoff rights under non-bankruptcy law, requiring the Debtors to remit the balances in the DIP Accounts to the FDIC-Receiver pursuant to the 345 Order and granting the FDIC-Receiver such other relief as may be just and proper.

[Intentionally Left Blank]

Dated: Dallas, Texas
January 28, 2010

Respectfully submitted,

ADORNO YOSS WHITE & WIGGINS, L.L.P.

By: /s/ Peter C. Lewis

Peter C. Lewis
Texas State Bar No. 12302100
Bank of America Plaza
901 Main Street, Suite 6200
Dallas, Texas 75202
Telephone: 214-665-4150
Facsimile: 214-665-4160

-and-

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.

By: /s/ Steven B. Soll

Steven B. Soll
(Admitted Pro Hac Vice)
230 Park Avenue
New York, New York 10169
Telephone: 212-661-9100
Facsimile: 212-682-6104

Attorneys for the
Federal Deposit Insurance Corporation, as Receiver for Guaranty Bank
Kathryn Norcross, Esq.
Dennis J. Early, Esq.

## CERTIFICATE OF CONFERENCE

       The undersigned hereby certifies that on the 26th day of January, 2010, he conferred with Ian Peck regarding the relief requested in the foregoing motion and he indicated that the Debtors opposed the relief sought pursuant to said motion.

       /s/ Peter C. Lewis
       **PETER C. LEWIS, ESQ.**

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a true and correct copy of the foregoing motion was served by first-class mail, postage prepaid, telecopy, certified mail, return receipt requested and/or by electronic notification to (i) the Office of the United States Trustee for the Northern District of Texas, (ii) counsel for the Debtors, (iii) counsel for Wilmington Trust Company, (iv) counsel for BBV Compass, (v) those parties who have filed in this chapter 11 case a request for notice and (vi) the persons and/or entities registered with CM/ECF on this the 28th day of January, 2010.

       /s/ Peter C. Lewis
       **PETER C. LEWIS, ESQ.**

1491694.4