Michael D. Warner (TX Bar. No. 00792304)
**WARNER STEVENS, L.L.P.**
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
Tel:　　(817) 810-5250
Fax:　　(817) 810-5255
Email:　mwarner@warnerstevens.com

Douglas E. Spelfogel (admitted *pro hac vice*)
Olya Petukhova (admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
90 Park Ave., 36th Floor
New York, NY 10016
Tel:　　(212) 682-7474
Fax:　　(212) 687-2329
Email:　dspelfogel@foley.com
Email:　opetukhova@foley.com

**COUNSEL FOR WILMINGTON TRUST
COMPANY AS INDENTURE TRUSTEE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| GUARANTY FINANCIAL GROUP INC., | § | CASE NO. 09-35582-bjh |
| *et al.*, | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

**OBJECTION OF WILMINGTON TRUST COMPANY AS INDENTURE
TRUSTEE TO MOTION OF THE FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR GUARANTY BANK, FOR AN
ORDER MODIFYING THE AUTOMATIC STAY AS TO PROPERTY
AND GRANTING SETOFF BY THE FDIC-RECEIVER**

Wilmington Trust Company ("Wilmington Trust"), as Indenture Trustee under that certain Indenture, dated as of September 15, 2006 between Temple-Inland Financial Services, Inc., as Issuer (the "Issuer")[1], and the Trustee, by and through its

---

[1] Temple-Inland Inc. ("Temple-Inland") formed Guaranty Bank in 1988. On December 28, 2007, Temple-Inland spun off its previously integrated financial services division, forming Guaranty Financial

attorneys, submits this Objection to the Motion of the Federal Deposit Insurance Corporation, as receiver for Guaranty Bank (the "FDIC"), for an Order Modifying the Automatic Stay as to Property and Granting Setoff by the FDIC (the "Motion"). In support of this Objection, Wilmington Trust states as follows:

**INTRODUCTION**

The Motion should be denied because the FDIC cannot meet its burden of proof to establish a right to setoff or relief from the automatic stay. First, the FDIC has failed to establish that it has a valid and enforceable claim against the Debtors – an obvious prerequisite to any right of setoff. The FDIC's alleged claims against the Debtors are uncertain at best and subject to dispute through the claims adjudication process.

Second, the FDIC cannot establish mutuality between its alleged claims against the Debtors and the claims of the Debtors – another fundamental requirement to establish a right to setoff. The Debtors' accounts at Guaranty Bank along with associated liabilities were transferred to and assumed by BBVA Compass, Birmingham, Alabama ("Compass Bank"). As a result, any claims the Debtors had related to the funds in those accounts following the P&A Agreement were against Compass Bank, not Guaranty Bank or the FDIC. The FDIC cannot setoff its own claim against the Debtors with the Debtors' claim against a third party.

---

Services, Inc. ("GFG") as a stand-alone public company focused on financial services business. GFG is the parent company of Guaranty Group Ventures Inc. ("GGVI"), Guaranty Group Capital Inc. ("GGCI"), and Guaranty Holdings Inc. I ("GHI"). GHI serves as the holding company for GFG's investment in Guaranty Bank and owns 100% of the common stock of Guaranty Bank.

Finally, even if the FDIC could establish a right to setoff—it cannot—the FDIC has failed to establish its right to relief from the automatic stay. Without a right to setoff, there is no basis to lift the automatic stay. In addition, cause does not exist to lift the automatic stay because the FDIC is adequately protected. The funds currently held in debtor-in-possession accounts are effectively frozen and are not at risk of being diminished. For all of these reasons, the FDIC is not entitled to setoff or relief from the automatic stay and the Motion must be denied.

## BACKGROUND

### A. The Guaranty Bank Receivership and the P&A Agreement

On August 21, 2009, Guaranty Bank was closed and the FDIC was appointed as its receiver. On that same day, the FDIC entered into a Purchase and Assumption Agreement with Compass Bank, under which Compass Bank purchased certain assets and assumed certain liabilities of Guaranty Bank from the FDIC (the "P&A Agreement").

Pursuant to the P&A Agreement, deposit accounts held by Guaranty Bank, and then by the FDIC as receiver, were transferred to Compass Bank. Among the transferred accounts were certain accounts held by the Debtors, as described below. Once those accounts were transferred, Compass Bank assumed any liabilities owed to the Debtors including, among other things, liability to the Debtors for withdrawals and other obligations associated with such accounts.

### B. Chapter 11 Cases and the 345 Motion

On August 27, 2009 (the "Petition Date"), GFG and GFG's wholly owned subsidiaries, GHI, GGVI and GGCI (together, the "Debtors"), each filed voluntary cases under Chapter 11 (the "Chapter 11 Cases") of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). The Chapter 11 Cases are now being jointly administered but have not been substantively consolidated. No trustee, examiner or committee of unsecured creditors has been appointed in the Chapter 11 Cases. Wilmington Trust is the largest uncontested unsecured creditor in these cases, with an asserted claim in excess of $300 million.

On the Petition Date, the Debtors filed a Motion for Order Implementing the Requirements of Section 345(b) of the Bankruptcy Code and the Region VI, Northern District of Texas, Guidelines for Chapter 11 Debtors-in-Possession (the "345 Motion"). Pursuant to the 345 Motion, the Debtors requested authority to move certain bank accounts and the funds held therein in an amount of approximately $21.5 million from three different financial institutions to new debtor-in-possession accounts in accordance with the requirements of § 345(b) of the Bankruptcy Code and the Region VI, Northern District of Texas, Guidelines for Chapter 11 Debtors-in-Possession.

Among the accounts and funds to be transferred were six accounts maintained by the Debtors at Compass Bank that were purchased from Guaranty Bank pursuant to the P&A Agreement (the "Accounts"). On September 3, 2009, this Court entered an order approving the 345 Motion (the "345 Order") and ordering the Debtors to promptly transfer the cash in the Accounts held at Compass Bank to new interest bearing debtor-in-possession bank accounts (the "DIP Accounts") at an authorized depository identified on the Authorized Depository List for the Northern District of Texas. Pursuant

4

to the 345 Order, the DIP Accounts were opened at Bank of America and the funds in the Accounts were transferred to the DIP Accounts.

### C. FDIC's Alleged Claims

In its Motion, the FDIC asserts several claims against the Debtor GFG. First, the FDIC says that it has an unliquidated claim based on of GFG's alleged failure to maintain the capital of Guaranty Bank, purportedly under § 365(o) of the Bankruptcy Code.[2] In support of this claim, the FDIC cites statutory and regulatory authority as well as alleged "voluntary commitments" of GFG, including a "Source of Strength Agreement" dated January 27, 2009. The FDIC does not specify, however, the precise basis for GFG's alleged capitalization obligations under either the statutes, regulations, or "voluntary commitments."

Second, the FDIC asserts an unliquidated, contingent claim for future tax refunds that it asserts are property of the FDIC and not property of GFG's estate. The FDIC relies on a "Tax Allocation Policy" in support of this claim, but does not indicate the applicable provisions of such policy or explain why these provisions give rise to a claim in favor of the FDIC.

Third, the FDIC asserts an unsecured claim for an undetermined amount of intercompany charges allegedly owed by GFG to Guaranty Bank. The FDIC states it is still investigating such a claim, which is allegedly rooted in payroll tax obligations and allocations of certain overhead expenses. The FDIC assets that this claim is supported by

---

[2] The FDIC also asserts that the claim based on GFG's alleged obligation to capitalize Guaranty Bank is entitled to an administrative priority. Numerous courts, however, have held that such a claim is *not* entitled to administrative priority. *See, e.g., Wolkowitz v. FDIC (In re Imperial Credit Indus., Inc.)*, 527 F.3d 959, 973-75 (9th Cir. 2008); *Franklin Savings Corp. v. OTS*, 303 B.R. 488, 501-02 (D. Kan. 2004).

5

GFG's books and records but does not indicate the relevant portions of such books and records or attach the books and records to its proof of claim.

Fourth, the FDIC asserts a claim for recoveries from approximately 23 separate insurance policies in an unliquidated and contingent amount, as well as an unearned premium refunds on such policies. The FDIC does not specify the precise basis for its alleged entitlement to recover under any one of these policies.

Finally, the FDIC asserts unspecified and unsupported claims for fraudulent conveyances and other unliquidated, contingent claims. The FDIC does not set forth any facts underlying these alleged claims but rather simply reserves its rights and states that the investigation into potential claims of this nature remains ongoing.

In addition to its purported claims against GFG, the FDIC asserts claims against each of GFG's affiliated Debtors. There does not appear to be any independent basis for these claims. Rather, the FDIC claims that the affiliated Debtors "are or may be jointly and severally liable to the [FDIC] based upon the [FDIC's] ongoing investigation…and/or on the basis of the [FDIC's] reservation of rights to assert claims under the theory of substantive consolidation or other remedy at law or equity." (Motion, p. 9.) The FDIC does not even attempt to set forth any facts that allegedly support its claims against the affiliated debtors or to provide any detail as to the legal basis for these claims. Rather, the FDIC simply relies on a purported reservation of rights and its "ongoing investigation."

## OBJECTION

### A. FDIC Has Not Established A Right To Setoff

To maintain a claim for setoff, the FDIC must prove: (1) A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case; (2) The creditor has a valid claim against the debtor which arose prior to the commencement of the bankruptcy case; and (3) The debt and the claim are mutual obligations. *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1035 (5th Cir. 1987); *See also Capital Concepts Properties 85-1 v. Mutual First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994) (setoff is proper only where demands are mutual, between the same parties, and in the same capacity or right); *In re Gibson,* 308 B.R. 763 (Bankr. N.D. Tex. 2002) (in order for a creditor to assert its setoff rights, it must have a valid, prepetition claim against the Debtor).

The FDIC bears the burden of proof as the party articulating a right to setoff. *Id.* at 766. Further, the right of setoff under § 553 of the Bankruptcy Code is permissive, not mandatory, and allowance of setoff is within the discretion of the Court. *Id.* Here, the FDIC has failed to meet its burden by showing it has a valid and enforceable prepetition claim against the Debtors that is mutual with claims by the Debtors, nor do the equities support setoff.

#### 1. FDIC Does Not Have A Valid And Enforceable Claim

The FDIC's Motion should be denied because it cannot establish that it has a valid and enforceable claim against the Debtors. While the FDIC cites case law for the proposition that setoff may be appropriate under some circumstances even when the claim at issue is unliquidated or even contingent (Motion, pp.12-13, n.14), the circumstances present in this case do not permit the FDIC to exercise its purported setoff

rights at this stage of the proceedings. As previously stated in this Circuit, "[s]etoff is permitted when, at the time the bankruptcy petition is filed, the debt is ***absolutely owing*** but is not presently due, or when a ***definite liability*** has accrued but is not yet liquidated." *In re Young*, 144 B.R. 45, 46 (Bankr. N.D. Tex. 1992) (emphasis added), *citing United States v. Thomas (In re Thomas)*, 91 B.R. 731 (N.D. Tex. 1988), *judgment amended*, 93 B.R. 475 (N.D. Tex. 1988); *United States v. Parrish (In re Parrish)*, 75 B.R. 14 (N.D. Tex. 1987). "Under the rule, ***there must be a definite and enforceable obligation at the time the bankruptcy petition is filed*** even though it is not yet presently due or the amount has not yet been determined." *Young*, 144 B.R. at 47 (emphasis added).[3] [4]

Setoff is not appropriate at this stage because the FDIC has not met its burden of proving that the Debtors' alleged debts to the FDIC are absolutely owing or definite.[5] For several reasons, the FDIC cannot establish a statutory or contractual right

---

[3] Numerous other decisions are in accord. *See, e.g., Sherman v. First City Bank of Dallas*, 99 B.R. 333, 338 (N.D. Tex 1989) (setoff appropriate only where prepetition debt is "absolutely owing"); *In re Aquasport, Inc.*, 155 B.R. 245, 248 (S.D. Fla. 1992) (declining to allow setoff where claimant "stipulated to the contingent nature of its claim"); *Moratzka v. United States (In re Matthieson)*, 63 B.R. 56, 59 (D. Minn. 1988); *In re Nickerson & Nickerson, Inc.*, 62 B.R. 83, 85 (Bankr. D. Neb. 1986) ("the right to setoff may be asserted in bankruptcy even though one of the debts involved is absolutely owing but not presently due when the petition is filed"); *Whitman v. Seedtec Int'l, Inc. (In re Whitman)*, 38 B.R. 395, 397 (Bankr. D.N.D. 1984).

[4] *Braniff Airways,* 814 F.2d at 1036 ("The debt was ***absolutely owed***; it was just not due until a calculation of the amount of fuel that was used was made.") (emphasis added); *In re Glenn*, 207 B.R. 418, 420 (Bankr. E.D. Pa. 1997) ("As a general matter, 'a claim or debt must be found to be ***absolutely owing*** at the time of the filing of the petition to be considered a pre-petition item.'") (emphasis added), *quoting In re Rozel Indus., Inc.*, 120 B.R. 944, 949 (Bankr. N.D. Ill. 1990).

[5] In its Proof of Claim, the FDIC expresses uncertainty as to whether its claims are actually owing and the dollar amount of such claims. For example, the FDIC stated that it "believes "its claim may be in excess of a certain dollar amount (POC at ¶2); that the bases for its claim has not yet been fully determined (POC at ¶2); with regard to the capital maintenance claims, that it is only able to "estimate" an "approximate" amount owed and that it is still investigating these claims (POC at ¶8); with regard to the tax related claims, that it is unclear about the amount of its claim (POC at ¶15) or whether the tax refunds are property of the FDIC (POC at ¶16); with regard to the claim to insurance premiums, that the amounts are "unearned" (POC at ¶24) and that it is unsure who purchased these insurance policies and who is the named

8

to its largest asserted claim arising out of GFG's alleged obligation to maintain the appropriate capital levels of Guaranty Bank. First, the FDIC cannot establish that any statutory provision creates a private right of action in favor of Guaranty Bank or the FDIC to enforce any alleged capital maintenance obligation. Courts have uniformly held that such a private right of action does not exist. *See RTC v. Tetco*, 758 F. Supp. 1159, 1162 (W.D. Tex. 1990) (holding that no private right of action existed to enforce a regulatory net worth maintenance condition or any other condition under the Bank Holding Company Act or the Change of Control Act), *vacated by settlement* No. 91-5612, 1992 WL 437650 (5th Cir. Apr. 7, 1992); *RTC v. Savers, Inc.*, No. LR-C-89-529, 1990 WL 290314, at *1 (Bankr. E.D. Ark. June 12, 1990) (same); *Ameribanc Investors Group v. Zwart*, 706 F. Supp. 1248, 12540-58 (E.D. Va. 1989) (same); *MCorp Financial, Inc. v. Board of Governors of Fed. Reserve Sys.*, 900 F.2d 852 (5th Cir. 1990) (holding that Board of Governors of Federal Reserve lacked statutory authority under the Bank Holding Company Act to require debtor bank holding company to transfer its funds to subsidiary bank), *rev'd in part on other grounds* 502 U.S. 32 (1991). Thus, the FDIC cannot establish a statutory right to its capital maintenance claim.

Second, the FDIC relies on a "Source of Strength Agreement" that it does not attach to its Proof of Claim as support for the capital maintenance claim. The Source of Strength Agreement was allegedly a condition of GFG's receipt of funds under the Treasury Department's Troubled Assets Relief Program. This agreement does not support the FDIC's capital maintenance claim because the FDIC cannot establish that it

---

beneficiary (POC at ¶19); and with regard to intercompany claims and the deposit funds claim, that its claim is "undetermined." (POC at p. 4).

9

creates a contractual right in favor of Guaranty Bank or the FDIC. Numerous courts have held that a capital maintenance commitment given by a bank holding company does not constitute a valid contract, because there was no offer, acceptance, or meeting of the minds; rather, a capital maintenance commitment is simply a statement setting forth a regulatory condition with which the holding company is allegedly required to comply. *See, e.g., Tetco*, 758 F. Supp. at 1162 (W.D. Tex. 1990); *United Life Ins. Co. v. Ryan*, 772 F. Supp. 366, 372-74 (S.D. Ohio 1991), *rev'd in part on other grounds* 985 F.2d 1320 (6th Cir. 1993); *In re Conner Corp.*, No. 87-01697-MO4, 1990 WL 124052, at *4 (Bankr. E.D.N.C. July 9, 1990); *Savers,* 1990 WL 290314, at *1. Even if the Source of Strength Agreement were somehow deemed a valid contract, neither Guaranty Bank nor the FDIC are a party to the contract; rather, the agreement runs between GFG and the Office of Thrift Supervision. The FDIC has failed to demonstrate that it is a third-party beneficiary or is otherwise entitled to enforce the agreement. For these reasons, the FDIC cannot establish a contractual right to its capital maintenance claim.

Finally, the FDIC asserts that its capital maintenance claim is entitled to administrative priority status under 11 U.S.C. § 365(o). Contrary to this assertion, several courts have held that section 365(o) does not create an administrative expense priority for a capital maintenance claim. *Wolkowitz v. FDIC (In re Imperial Credit Industries, Inc.)*, 527 F.3d 959, 974 (9th Cir. 2008); *Franklin Savings Corp. v. OTS*, 303 B.R. 488, 501-03 (D. Kan. 2004); *see also RTC v. FirstCorp, Inc. (In re FirstCorp, Inc.)*, 973 F.2d 243, 248 (4th Cir. 1992).

Each of the remaining claims asserted by the FDIC remains subject to potential disputes and thus cannot be setoff at this stage. Indeed, there are significant

questions as to GFG's alleged obligation to remit future tax refunds to the FDIC, GFG's alleged liability for intercompany claims, and the FDIC's alleged entitlement to recover benefits under certain insurance policies. Each of these claims requires analysis of the relevant documents, *e.g.* the Tax Allocation Policy and each of approximately 23 separate insurance policies,[6] as well as relevant statutes, regulations, and case law. As to the FDIC's claims against GFG's affiliated debtors, the FDIC has done no more than to reserve its rights to assert some as yet undefined and completely unsupported claim based on joint and several liability, substantive consolidation, or some similar doctrine. There can be no argument that such a claim is not yet "absolutely owing."

There has been no adjudication that the FDIC's claim against the Debtors, or that any portion thereof, is valid. In its Motion, the FDIC asks this Court to short circuit the claims adjudication process and immediately enter an order finding that its claims are valid and can be setoff. The FDIC's request for a *sub rosa* ruling that its claims are valid is inappropriate and should not be countenanced at this stage, particularly where, as further discussed below, the FDIC is adequately protected with respect to the subject DIP Accounts and will not be damaged if the exercise of its alleged setoff rights is delayed while its claims are adjudicated. Even if setoff were appropriate in the first instance (as further explained below, it is not), a more prudent course would be to postpone setoff until such time as the disputes, contingencies, and liquidation issues surrounding the FDIC's claims can be resolved appropriately.

---

[6] The FDIC provides a partial list of the insurance policies but does not provide the actual policies in their proof of claim (POC at ¶19).

### 2. There Is No Mutuality Between Claims Of The FDIC And Debtors

#### a. The FDIC Has No Obligation To The Debtors

Mutuality exists "where the claims or debts are owed **between the same parties in the same right or capacity**." *In re Ionosphere Clubs, Inc*., 164 B.R. 839, 843 (Bankr. S.D.N.Y. 1994) (emphasis added); *see also In re Winstar Communications*, 315 B.R. 660 (D. Del. 2007). "The mutuality of debt requirement is generally considered satisfied where the creditor is directly obligated to the debtor and the debtor is, in return, directly obligated to the creditor, without the involvement of third parties or fiduciary relations." *Tomsic v. Sales Consultants of Boston, Inc. (In re Salience Assocs., Inc.)*, 372 B.R. 578, 589 (Bankr. D. Mass. 2007); *In re Genuity Inc*., 2007 WL 1792252, at *4-5 (Bankr. S.D.N.Y. 2007).

Here, no mutuality exists between the FDIC and the Debtors because the FDIC is not directly obligated to the Debtors for the funds deposited in the DIP Accounts. Through the P&A Agreement, the FDIC transferred all of the Accounts and associated liabilities to Compass Bank who became liable to the Debtors for the funds deposited in the transferred Accounts. Absent explicit direction from the FDIC to either withhold or return a portion of any deposit balance, Compass Bank remained liable.[7] The FDIC did not so direct Compass Bank to withhold or return any portion of the Accounts prior to or

---

[7] Section 9.5 of the P&A Agreement provides, in part, "At the direction of the Receiver or the Corporation, [Compass Bank] shall return all or a portion of such deposit balance to the Receiver or the Corporation, as appropriate, and thereupon [Compass Bank] shall be discharged from any further liability to such depositor with respect to such returned balance…" In addition, Section 12.1(a)(8) of the P&A Agreement requires that the FDIC indemnify Compass Bank only for the claims of any depositor "whose deposit has been accorded 'withheld payment' status and/or returned to the [FDIC] in accordance with Section 9.5…"

12

after the Petition Date.[8] As a result, the FDIC no longer had any funds due the Debtors which it can use to setoff its alleged claims against the Debtors.[9] *See In re V.N. DePrizio Construction Co. v. Levit*, 52 B.R. 283, 287 (Bankr. N.D. Ill. 1985) (In denying set-off, the court held that a broker did not have any funds due the debtor which it could use to set-off amounts due from the debtor).

The authority cited by the FDIC supports this conclusion. First, the FDIC asserts it has a statutory right to setoff under 12 U.S.C § 1822(d) and 11 U.S.C. § 553. However, § 1822(d) allows setoff against "any portion of a depositor's insured deposits with a failed bank…" (Motion ¶ 19) Here, the funds at issue were not deposited at Guaranty Bank following the P&A Agreement. In addition, setoff under § 553 requires that "the creditor owes a prepetition debt to the debtor." (Motion ¶ 22) As described above, the Accounts were transferred pursuant to the P&A Agreement and never returned prior to the Petition Date so there is no prepetition debt owed the Debtors by the FDIC.

The case law cited by the FDIC further supports this conclusion. In *Matter of Texas Mortg. Services Corp.*, the Fifth Circuit held that "funds **deposited with a bank** are general deposits which create a debtor-creditor relationship between **the bank and its depositor**. 761 F.2d 1068, fn. 11 (5th Cir. 1985) (emphasis added). "When the bank and its depositor stand in this relationship, the bank has a right to setoff funds **in the general account** against indebtedness due from the depositor." *Id*. (emphasis added)

---

[8] Even if the FDIC were to argue that the Motion constitutes a demand for the return of the Debtors' funds as provided under Section 9.5 of the P&A Agreement thereby creating an obligation to the Debtors, such an obligation would arise post-petition and would not satisfy the requirements for setoff under § 553 of the Bankruptcy Code.

[9] While the 345 Order reserved the FDIC's right to assert setoff against funds held in the DIP Accounts, that does not create such a right. Because the FDIC no longer owed a debt to the Debtors following the P&A Agreement, there can be no right to setoff.

13

NYC_767806.1

Here, because the Debtors' Accounts were transferred to Compass Bank, the Debtors funds were no longer deposited with Guaranty Bank, and there was no debtor-creditor relationship between the FDIC and the Debtors that would give rise to a prepetition claim by the Debtors against the FDIC. In addition, there are no funds of the Debtors "in the general account" of Guaranty Bank or the FDIC which it could use to set-off the alleged amounts due from the Debtors.

### b. Debtors Are Separate Entities For Purposes Of Mutuality

Even if it is determined that the FDIC owes a debt to the Debtors and setoff is otherwise valid—it clearly is not—the FDIC cannot setoff claims against one Debtor with amounts it may owe to an affiliate of that Debtor. Each Debtor and its affiliates will not be treated the same for purposes of mutuality. *See In re Berger Steel Co.*, 327 F.2d 401 (7th Cir. 1964) (disallowing setoff in favor of the parent corporation to which the debtor owed money with respect to an account which the subsidiary corporation owed to the debtor); *Matter of Fasano/Harriss Pie Co.*, 43 B.R. 864, 870 -71 (Bankr. W.D.Mich. 1984) (disallowing setoff because "one subsidiary may not setoff a debt owed to a bankrupt against a debt owing from the bankrupt to another subsidiary"); *In re Vehm Engineering Corp.*, 521 F.2d 186, 190 -91 (9th 1975) (holding that the debts owed to the debtor and the amounts the debtor owed were not due to and from the same party where two companies were controlled and dominated by the same person but "were at all relevant times separate legal entities;" therefore, there was no mutuality).

Here, the FDIC is improperly attempting to setoff the total amount of held by all Debtors in the DIP Accounts regardless of which Debtor it holds a claim against.

14
NYC_767806.1

As described in the 345 Motion, of the amounts held in the DIP Accounts, GFG holds approximately $11.2 million, GGCI holds $4.1 million and GGVI holds $6.2 million. Therefore, if it is determined that the FDIC has a valid claim against GFG and owes a mutual debt to GFG, but not the other affiliate Debtors, it may only setoff the $11.2 million due GFG, not the entire amount in the DIP Accounts. As described above, the FDIC does not have a valid and enforceable claim and right to setoff against any one of the Debtors. However, to the extent the FDIC is found to have a valid right to setoff, that right must be limited to the amounts owed the particular Debtor against which it holds a valid and enforceable claim.

  **B. FDIC Has Not Established A Right To Relief From The Automatic Stay**

    As set forth above, the FDIC has failed to establish a valid right to setoff and absent such a right, the FDIC has no basis to seek relief from the automatic stay imposed by § 362(a)(7) of the Bankruptcy Code. *See In re Stienes,* 285 B.R. 360 (Bankr. D. N.J. 2002)(the automatic stay only applies to valid setoff claims). However, even if there is a right to setoff, the FDIC lacks cause to modify the automatic stay. Therefore, the Motion is premature and should be denied for lack of cause.

    **1. FDIC Is Adequately Protected**

    The FDIC argues there is cause to lift the automatic stay under § 362(d)(1) of the Bankruptcy Code because it has "received nothing in the way of adequate protection, either in the form of cash payments, a replacement lien, or other 'indubitable equivalent.'" (Motion ¶ 29) However, to establish a prima facie case for cause due to a lack of adequate protection, a movant must demonstrate that it holds a claim, secured by

15

a valid, perfected lien upon estate property, and that a decline in value of its collateral is either occurring or is threatened. *In re Box*, 324 B.R. 290 (Bankr. S.D. Tex. 2005). The FDIC has failed to establish a valid, secured claim in the Debtors' DIP Accounts. In addition, the FDIC has failed to show that such DIP Accounts are diminishing in value. If the FDIC is unable to show diminishing value, there is no need for protection of the automatic stay. *See In re Tally Well Service, Inc.*, 45 B.R. 149 (Bankr. E.D. Mich. 1984) (holding that a creditor was adequately protected because there was no diminishing value in the debtor's bank account when it held a security interest in the bank account and the funds in the bank account were being held by the trustee and the debtor was not permitted to withdraw them).

Here, the FDIC has not shown that the funds in the DIP Accounts are in any danger of being diminished or that these funds can even be accessed by the Debtors absent a court order. Funds in a bank account are treated as cash collateral under § 363(a) of the Bankruptcy Code and can only be used upon court order. Therefore, the funds in the DIP Accounts are not in danger of being diminished. *In re Archer*, 34 B.R. 28, 30 (Bankr. N.D. Tex. 1983) (the debtor's use of cash collateral is prohibited unless the creditor consents to use of the cash collateral or a court permits use of cash collateral).

Additionally, the 345 Order states that "the Debtors will notify the FDIC if, at any time prior to the filing of the Debtors' first Monthly Operating Report, the aggregate cash balance in the DIP Accounts decreases by more than $250,000 from the aggregate cash balance in the Debtors' Accounts on the Petition Date. . .[T]he Debtors will not spend more than $250,000.00 in the aggregate without prior order from the Court." Therefore, under the 345 Order, to the extent the value of the DIP Accounts is

16

diminished by more than has already been authorized, the Debtors must inform the FDIC. Until that time, any further request for adequate protection is premature.

As a result, the FDIC has not shown that the funds in the DIP Accounts are in any danger of being diminished or that such funds can even be accessed by the Debtors absent a court order. Therefore, even if the FDIC is able to assert a valid claim against funds in the DIP Accounts, because the FDIC is adequately protected, there is no need for relief from the automatic stay.

**2. The DIP Accounts Are Necessary To An Effective Reorganization**

The FDIC also argues that relief from the automatic stay is warranted under § 362(d)(2) of the Bankruptcy Code because its alleged claim against the Debtors exceeds the value of its collateral in the DIP Accounts and such collateral is not necessary to an effective reorganization. As described above, however, the FDIC has failed to establish the validity or extent of any claim against the Debtors making it too early to tell whether or not it is undersecured and if the Debtors in fact have any equity in the property at issue.

## CONCLUSION

For numerous reasons described above, the Motion is premature and should be denied. First, the FDIC has failed to establish a right to set-off. The FDIC has not established a valid and enforceable claim against any of the Debtors or that any of the Debtors have a mutual claim against the FDIC. Second, the FDIC has failed to establish a basis or cause for lifting the automatic stay. The FDIC has not shown a valid right to set-off or that it is not adequately protected to justify the relief requested.

17

## RESERVATION OF RIGHTS

The parties have agreed to set a schedule that will permit discovery and additional briefing on the issues presented in the Motion. The Trustee reserves all of its rights to amend the arguments set forth herein and to present additional arguments that may arise through discovery or otherwise.

Respectfully submitted,

DATED: February 26, 2010

> By: Michael D. Warner
> Michael D. Warner, Esq.
> **WARNER STEVENS, L.L.P.**
> 301 Commerce Street, Suite 1700
> Fort Worth, TX 76102
> Tel: (817) 810-5250
> Fax: (817) 810-5255
> Email: mwarner@warnerstevens.com
>
> And
>
> Douglas E. Spelfogel, Esq. (admitted *pro hac vice*)
> Olya Petukhova, Esq. (admitted *pro hac vice*)
> **FOLEY & LARDNER LLP**
> 90 Park Ave., 36th Floor
> New York, NY 10016
> Tel: (212) 682-7474
> Fax: (212) 687-2329
> Email: dspelfogel@foley.com
> Email: opetukhova@foley.com
>
> Counsel for Wilmington Trust Company as Indenture Trustee

# **CERTIFICATE OF SERVICE**

      I hereby certify that on this 26th day of February 2010, a true and correct copy of the foregoing was served by electronic service upon all parties receiving ECF notice in these cases.

                                                    __/s/ Michael D. Warner___
                                                    Michael D. Warner