**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | Case No. 09-35582-bjh11 |
| | ) | Chapter 11 |
| | ) | |
| **GUARANTY FINANCIAL** | ) | |
| **GROUP INC., et al.,** | ) | Courtroom 2 |
| | ) | 1100 Commerce Street |
| **Debtors.** | ) | Dallas, Texas 75242-1496 |
| | ) | |
| | ) | July 6, 2010 |
| | ) | 9:37 A.M. |

TRANSCRIPT OF MOTION APPLICATION FOR COMPENSATION (SECOND INTERIM) FOR HAYNES AND BOONE, LLP, DEBTOR S ATTORNEY, PERIOD: 12/1/2009 TO 3/31/2010, FEE: $216,864.00, EXPENSES: $5,647.45. FILED BY ATTORNEY HAYNES AND BOONE, LLP (232). APPLICATION FOR COMPENSATION SECOND INTERIM) FOR LAIN, FAULKNER & CO., P.C., OTHER PROFESSIONAL, PERIOD: 12/1/2009 TO 3/31/2010, FEE: $51,569.50, EXPENSES: $242.94. FILED BY OTHER PROFESSIONAL LAIN, FAULKNER & CO., P.C. (233). MOTION TO EXTEND OR LIMIT THE EXCLUSIVITY PERIOD FILED BY DEBTOR GUARANTY FINANCIAL GROUP INC. (243).
BEFORE HONORABLE BARBARA J. HOUSER
UNITED STATES CHIEF BANKRUPTCY JUDGE


APPEARANCES:

| | |
|---|---|
| For the Debtor: | Haynes & Boone, LLP |
| | By: IAN PECK, ESQ. |
| | 2323 Victory Avenue, Suite 700 |
| | Dallas, TX 75219-7673 |
| | |
| ECR OPERATOR: | Nicole Whittington |
| | |
| **TRANSCRIPTION SERVICE:** | **TRANSCRIPTS PLUS, INC.** |
| | **435 Riverview Circle** |
| | **New Hope, Pennsylvania 18938** |
| | **Telephone: 215-862-1115** |
| | **Facsimile: 215-862-6639** |
| | e-mail **CourtTranscripts@aol.com** |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For FDIC: | Otterbourg, Steindler, Houston & Rosen<br>By:  STEVEN B. SOLL, ESQ.<br>230 Park Avenue<br>New York, New York 10169 |
| For Wilmington Trust Company: | Foley & Lardner, LLP<br>By:  DOUG SPELFOGEL, ESQ.<br>90 Park Avenue<br>New York, New York 10016 |

1      THE COURT:  Mr. Peck?

2      MR. PECK:  Good morning, Your Honor.  Ian Peck for
3 the debtors.

4      THE COURT:  All right.  Let me patch in our phone --
5                         (Pause)

6      THE COURT:  Good morning.  This is Judge Houser, do I
7 have parties on the phone?

8      MR. SOLL:  Yes, Judge.  You have Steven Soll from
9 Otterbourg, Steindler, Houston & Rosen, counsel for the FDIC as
10 receiver of Guaranty Bank.

11     THE COURT:  All right.

12     MR. SPELFOGEL:  Good morning, Your Honor.  Doug
13 Spelfogel from Foley Lardner on behalf of Wilmington Trust
14 Company.

15     THE COURT:  Excellent.  Please, Mr. Peck?

16     MR. PECK:  Thank you, Your Honor.  With me today is
17 Mr. Dennis Faulkner who is the CRO of each of the debtors.

18     Your Honor, we have three matters set for hearing
19 today, they're all unopposed.  The first is our third motion to
20 extend exclusivity, and the other two are the interim fee
21 applications for my firm, Haynes & Boone, and the firm of Lain,
22 Faulkner and Company.

23     I think before we delve into the matters, it probably
24 helps the Court to hear a general status report on what's going
25 on in the case.

1          THE COURT:  Please.

2          MR. PECK:  The last time you saw us was in early May
3  for a general case status conference.  We reported at that time
4  about our April settlement conference among the debtors, the
5  FDIC, and Wilmington Trust.

6          I think I mentioned at that time that a proposal was
7  made for a global resolution of most substantive issues in this
8  case.

9          I noted that the FDIC would need several weeks to
10 respond to that, given their internal workings.  And I think we
11 expressed some optimism by all three groups about the prospect
12 of a global resolution of our open issues.

13         I think I also previewed for the Court that we'd be
14 back here today asking for an extension of exclusivity.

15         To give the Court an update, since our last status
16 conference, we've made some significant progress towards our
17 goal.  The FDIC did, in fact, make a counterproposal, a little
18 -- almost three weeks ago.  Both before that counterproposal
19 and since then, we've had several discussions among the three
20 players.

21         Last week, we finalized and delivered another
22 counterproposal to the FDIC, and our discussions with them
23 continue.

24         All three parties still share the same optimism I
25 expressed at the May status conference.  And I believe we're

making some solid progress towards a consensual resolution of what are some complicated issues.

I think it's fair to say, and then the parties can speak for themselves, but I think all parties are happy with the progress in the case and the low burn rate of cash in the case. We've actually had more cash now than when we started back in August.

With that sort of general background, the first item on our agenda is the motion to extend exclusivity. Based on the status of our discussions with the FDIC and Wilmington Trust, we ask the Court to, again, extend exclusivity. This time for approximately 90 days.

As I stated at our last exclusivity hearing, we don't think it makes a whole lot of sense to go forward now with a plan, given the current concern today regarding the FDIC claims, the FDIC lift stay motion. Especially now when the settlement negotiations are in full swing and we're making some serious progress. We think going forward would just result in a contested confirmation and distract from our settlement efforts.

Similarly, any third party plan would also have to deal with those large issues and would probably be doomed to failure, at least at this point, and would distract us from our settlement efforts.

Currently exclusivity is set to expire on July 19th.

1  We are asking for the Court to extend that deadline to October
2  18th, and December 17th to the confirm the plan.
3           We think this extension will allow us to reach a
4  consensual result of the critical issues in the case.  And
5  after careful consideration, we believe that the extension of
6  exclusivity serves the best interest of the estates and should
7  be granted.
8           And I'm happy to answer any questions.  I don't know
9  if Mr. Soll or Mr. Spelfogel will have any comments.
10          THE COURT:  Does anyone else wish to be heard in
11 connection with the exclusivity period motion?
12          MR. SOLL:  Your Honor, Steven Soll.  We certainly
13 support the motion to extend the exclusivity, and we concur
14 with Mr. Peck's comments regarding the status of the case and
15 the impact of the exclusivity time period in conjunction with
16 the settlement discussions that are ongoing.
17          THE COURT:  Very well.  Then based upon the absence
18 of objection, and, in fact, based upon what appears to be
19 agreement that the case is proceeding appropriately, the Court
20 is prepared to grant the debtors' request for an extension of
21 exclusivity to October 18th and December 17th respectively.
22          MR. PECK:  Thank you, Your Honor.  We will upload an
23 order.  The order itself is pretty standard, although it
24 contains one somewhat unusual provision, and that is that it
25 modifies the stipulated order that we previously submitted to

7

1 the Court.

2 That previous order indicated that we would submit to
3 the FDIC and Wilmington Trust a plan in advance of filing. So,
4 that order is modified such that the deadline for us to do that
5 is consistent with the new exclusivity deadlines.

6 THE COURT: Very well. Thank you.

7 MR. PECK: Thank you, Your Honor.

8 That brings us to the two interim fee applications.
9 And because you haven't seen us much during this case, I want
10 to spend a little bit of time telling you sort of what's going
11 on behind the scenes.

12 THE COURT: Please.

13 MR. PECK: I think the most significant area of fees
14 incurred in this particular application period, which is
15 December 1, 2009 to March 31, 2010, is dealing with the FDIC's
16 administrative and priority claim, and their lift stay motion.

17 Certainly this is the most significant portion of the
18 Haynes & Boone fees. Those claims and that motion required an
19 analysis of some complicated legal and factual issues. There
20 are some somewhat rare issues of bankruptcy case law that are
21 brought up by those pleadings. There are also some bank law
22 issues that we had to familiarize ourselves with and really
23 delve into, including issues such as the source of strength
24 doctrine, certain capital ratio maintenance requirements under
25 bank law, various provisions of Title 12, and there's some

interesting corporate and control law issues brought up by the FDIC's position, as well.

There is also a somewhat long factual history of a relationship between the bank, the holding company, and the FDIC and Office of Thrift Supervision on the other hand.

We were required to analyze all these issues and draft what we believe is a detailed and thorough response to the FDIC's lift stay motion.

Along with that analysis, we engaged the FDIC in significant discussions about the issues before -- both before and after those pleadings were filed. We led negotiations regarding scheduling and discovery protocols in connection with those pleadings. And not insignificantly, we reviewed and produced a massive amount of client documents requested by the FDIC on an informal basis.

I should point out that although the size of this case is much smaller than Washington Mutual and some other bank holding company cases, the issues are not necessarily less complex, and they have required a significant amount of time for us to digest.

Another area of significant fees during this fee application period is investigating and reserving rights under the applicable D&O insurance policies. That required us to engage in discussions with former management, review more minutes and historical materials, and work closely with the

FDIC and Wilmington Trust to share information and draft appropriate notices of circumstances to the carriers to put them on notice of potential claims.

We also had some success in another area, which is recovering insurance policy premium refunds. And the Court may recall early in the case, we canceled various insurance policies that were no longer of use to the debtor, most of which covered operations of both the bank and the holding company.

We spent significant time tracking down the unused premiums and dealing with the insurers to recover those. And we've collected about $700,000 of those unused premiums to date.

And, of course, in addition to those categories, we had the ordinary task performed in all Chapter 11 cases, preparing monthly operating reports. Because this was a publicly held company, we have the SEC filings and the 8-Ks. We addressed various creditor inquiries. We processed some tax returns and interfaced with the IRS on audit requests, which took probably a little bit longer than usual because, as the Court may recall, at the Austin IRS office, a plane crashed into the building several months ago. That was after we had produced all our documents to the IRS. Those documents were all destroyed in that crash. So, it required a little bit of duplication of effort to get those back to the IRS and keep

that process moving, which would be important to the resolution of issues in this case.

We also compiled data and performed preliminary claims analysis, primarily the Lain Faulkner firm, in that category. And prepared and filed all necessary filings with this Court.

Regarding the fees sought for this interim period, for Haynes & Boone, we're talking about 216,864 in fees; 5,657 in expenses. And these figures are after $32,462 in voluntary fee reductions in the form of discounted billing rates.

For the Lain Faulkner Firm, those fees are 51,569.50, and $240 of expenses. And those figures are after a $1,028 fee reduction by the Lain Faulkner firm.

As I indicated during the first interim fee application, we expected that the fees during this period would be significantly less, and they were. If I recollect, the fees were approximately $125,000 less than the first interim fee period. And this particular application covers four months, whereas the first application only covered three months. So, the reduction is significant.

I've got more to say, but let me say there and see if the Court has any questions.

And I should point out that -- I guess before I turn the podium over -- that the FDIC did file a response to both applications seeking to reserve their rights in connection with

1  fees used to pay the two firms.  It's been the FDIC's position
2  that those -- all funds in the estate belong to the FDIC,
3  consistent with what we did at the first interim fee
4  application, we have revised the forms of order to make that
5  reservation of rights clear, and the FDIC has approved of the
6  form of order that we're prepared to submit today.
7           THE COURT:  Very well.  Let me ask, does any party
8  wish to be heard in connection with either of the two firms'
9  fee applications?
10          MR. SOLL:  Your Honor, Steven Soll again.
11          THE COURT:  Please.
12          MR. SOLL:  As Mr. Peck mentioned, we have filed a
13 reservation of rights with respect to the source of the funds
14 ultimately used.  And, of course, it's an interim application.
15 So, in that sense, we certainly reserve our rights to address
16 the totality of the fees when there's a final hearing.
17          Having said that, I would like to provide the Court
18 with our view of the fact that both Mr. Faulkner and Mr. Peck
19 have handled the case in a very professional, proactive way
20 that has focused on the issues.  And they, in essence, have
21 tried to act both as an honest broker for the disputes between
22 the FDIC and Wilmington Trust, but providing expertise and
23 extensive analysis in detail to try to move the matter forward.
24          So, I believe that both of their fees have been
25 constructive, the services have been constructive.  And in that

1  context, we would have no objection to the entry of the interim
2  order.
3              THE COURT:  Anyone else?
4              MR. SPELFOGEL:  Your Honor, this is Mr. Spelfogel
5  from -- on behalf of Wilmington Trust.
6              We have no objection to the award on an interim
7  basis, subject, of course, to a final application at the
8  appropriate time.  And, again, we concur that the debtor and
9  Mr. Faulkner have been working well with Wilmington and the
10 FDIC, and there's been considerable services and effort behind
11 the scenes here.  And we believe that on an interim basis, we
12 have no objection to entry of an order.
13             THE COURT:  Very well.  Mr. Peck, I've reviewed the
14 fee applications.  The fees that are requested appear to me --
15 particularly in light of some of the additional information
16 you've provided to the Court -- appear to me to be reasonable.
17 I appreciate the comments of your opposing counsel with respect
18 to the fees.  I suppose I could say I expect no less from the
19 firms that are before me, but it comes as no surprise that you
20 are both working effectively and proactively.
21             It also is clear to me that the intersection of
22 Chapter 11 with FDIC and bank holding company issues are
23 difficult ones.  And so, again, it comes as little surprise
24 that significant time is being spent behind the scenes trying
25 to work through those issues once an understanding of those

1  issues has been achieved.

2  So, for all of those reasons, I will sign interim
3  orders authorizing or allowing the fees in the amounts that
4  have been requested.

5  MR. PECK:  Thank you, Your Honor.

6  THE COURT:  Excellent.  What else do we need to do,
7  Mr. Peck?

8  MR. PECK:  I think that's all we have for today.  I
9  think the next time you'll see us -- well, I hope the next time
10 you see us we'll have some good news to report.

11 But in the meantime, we have negotiated with the FDIC
12 for the retention of some tax accountants that are necessary to
13 finalize some tax issues that we'd like to address while we
14 continue our discussions on other issues.  You'll be hearing
15 from us with an application to employ them soon.

16 Otherwise, hopefully the next time you'll hear from
17 us, we'll be talking more about the progress of our settlement
18 discussions.

19 THE COURT:  Excellent.  Good.  Thank you very much.

20 MR. PECK:  Thank you, Your Honor.

21 (Whereupon, at 9:51 A.M., the hearing was adjourned.)

TRANSCRIPTS PLUS, INC.
PHONE 215-862-1115 ● FAX 215-862-6639 ● E-MAIL CourtTranscripts@aol.com

```
                                                              14
 1
 2                          CERTIFICATE
 3
 4      I certify that the foregoing is a correct transcript from
 5  the electronic sound recording of the proceedings in the
 6  above-entitled matter.
 7
 8
 9   /s/ Karen Hartmann    AAERT CET**D0475 Date: August 3, 2010
10  TRANSCRIPTS PLUS, INC.
```