Robert D. Albergotti
State Bar No. 00969800
Ian T. Peck
State Bar No. 24013306
Autumn D. Highsmith
State Bar No. 24048806
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

**ATTORNEYS FOR THE
DEBTORS-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| GUARANTY FINANCIAL GROUP INC., | § | CASE NO. 09-35582-bjh |
| *et al.*, | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

### MOTION FOR APPROVAL OF SETTLEMENT WITH GUARANTY INSURANCE SERVICES, INC. PURSUANT TO FEDERAL RULE OF <u>BANKRUPTCY PROCEDURE 9019</u>

NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON NOVEMBER 8, 2010, WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.

IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.

Guaranty Financial Group Inc. ("GFG"), Guaranty Group Ventures Inc., Guaranty Holdings Inc. I, and Guaranty Group Capital Inc. (collectively, the "Debtors"), as debtors in possession, file this Motion for Approval of Settlement with Guaranty Insurance Services, Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion"), and, in support thereof, respectfully represent as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory basis for the requested relief is 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9019.

## II. BACKGROUND

2. On August 21, 2009 (the "Receivership Date"), the Director of the Office of Thrift Supervision appointed the Federal Deposit Insurance Corporation as receiver for Guaranty Bank (the "FDIC-Receiver") and advised that the FDIC-Receiver was to immediately take possession of Guaranty Bank (the "Receivership").

3. On August 27, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to manage and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. The Debtors' Chapter 11 cases are jointly administered.

4. No official committee of unsecured creditors has been appointed in these Chapter 11 cases. Further, no trustee or examiner has been requested or appointed in any of these Chapter 11 cases.

5. The Debtors have filed with the Court the *Statement of Background Information in Support of the Debtors' Chapter 11 Petitions* (the "Background Statement") and the *Declaration of Dennis Faulkner in Support of Debtors' Chapter 11 Petitions and First-Day Motions* (the "First Day Declaration"), which are incorporated by reference in this Motion.

**A.     The Insurance Refunds**

6. After the Petition Date, GFG sent letters to cancel several unexpired insurance policies (the "Cancellation Letters") issued prior to the Petition Date that covered against potential losses incurred in the operations of GFG and certain of its subsidiaries, including Guaranty Bank. The coverage provided by such policies became unnecessary upon GFG's cessation of operations and the sale of Guaranty Bank's assets by the FDIC-Receiver on August 21, 2009. In the Cancellation Letters, GFG directed the return of any unused premiums to GFG, care of Dennis Faulkner, the Debtors' Chief Restructuring Officer.

7. Before the Petition Date, Guaranty Insurance Services, Inc. ("GIS"), a former subsidiary of Guaranty Bank, served as insurance broker to the Debtors, and GIS was listed as the broker on many of the cancelled insurance policies. As a result of GIS's status as the Debtors' prepetition insurance broker, certain unearned premium refunds from GFG's insurance carriers were returned to GIS, instead of being returned directly to GFG.

8. GIS has asserted certain claims against the Debtors and asserts that it is entitled to setoff the unearned premium refunds (the "Premiums") against amounts allegedly owed by the Debtors to GIS.

9. GIS has returned $402,048.98 of the Premiums to the Debtors.[1] The Debtors are unsure whether insurance carriers have returned or will return additional amounts to GIS.

---

[1] Exhibit A, attached hereto, identifies the sources of the Premiums GIS has returned to the Debtors.

10. The Debtors have deposited all Premiums received from GIS into a reserve account consistent with the Stipulation Between the Debtors and the Federal Deposit Insurance Corporation, as Receiver, Re: Establishment of Reserve Account (the "Stipulation"), dated October 14, 2009, which was approved by the Court on October 16, 2009 in its Order Granting Motion Pursuant to Sections 105(a), 362(a), and 541(a) of the Bankruptcy Code for Approval of a Stipulation Between the Debtors and the Federal Deposit Insurance Corporation, as Receiver, Establishing a Reserve Account [Docket No. 96].[2]

**B.      Dispute Over the 2008 Franchise Tax Amounts**

11. Prior to the Petition Date, GFG filed consolidated Texas franchise tax reports on behalf of itself and certain of its subsidiaries, including, among others, Guaranty Bank and GIS (collectively the "GFG Tax Group").

12. In 2008, GFG timely requested that the Texas Comptroller extend its deadline for filing its 2008 franchise tax report (the "2008 Report"). In order to secure this extension, GFG was required to pay at least 90 percent of the GFG Tax Group's franchise tax liability that would be due in the 2008 Report (the "Estimated Tax"). On or about May 15, 2009, GFG paid $1,150,000.00 to the Texas Comptroller, which GFG believed to represent 90 percent of the Estimated Tax (the "Preliminary Tax Payment").

13. On November 16, 2009, GFG filed the 2008 Report acknowledging a total franchise tax amount of approximately $1,773,346.00 and accrued penalties and interest in excess of $75,000. As a result, approximately $700,000 remains due to the Texas Comptroller for the year 2008 from the GFG Tax Group (the "2008 Franchise Tax Liability").

---

[2] As described in more detail in the Stipulation, the FDIC-Receiver takes the position that all or a portion of the Premiums are property of the Receivership and not property of the Debtors' estates.

14. The Texas Comptroller notified GIS and its subsidiaries that they are not in good standing with the Texas Comptroller and that GIS's failure to pay the 2008 Franchise Tax Liability has resulted in the forfeiture of GIS's Charter and right to do business in Texas effective July 31, 2010.

15. GIS calculates its portion of the franchise tax liability for the year 2008 as not more than $187,000.00 (the "GIS 2008 Franchise Tax Liability") if GIS's 2008 Franchise Tax is calculated independent of the GFG consolidated report.

16. GIS argues that it is entitled to setoff the Premiums against the GIS 2008 Franchise Tax Liability. GIS relies upon sections 7.1(a) and 10.2(a) of that certain Stock Purchase Agreement dated December 31, 2008, executed by GIS and Guaranty Bank, to support its right of setoff, arguing that by virtue of this agreement, Guaranty Bank agreed to indemnify GIS for all tax liabilities relating to periods ending on or before December 31, 2008. GIS additionally argues that GFG as the filer of a consolidated franchise tax report is responsible for payment of all reported franchise taxes.

**C.    Claims Filed By GIS and its Affiliates**

17. GIS, its parent JLT Insurance Agency Holdings, Inc. ("JLT"), and its affiliate Guaranty California Insurance Services, Inc. ("GCI," and together with GIS and JLT, the "GIS Entities") have filed multiple proofs of claim against GFG for the 2008 Franchise Tax Liability (the "Franchise Tax Liability Claims"). The GIS Entities filed the following Franchise Tax Liability Claims as priority claims:

    a.   Proof of Claim Number 110, as amended, in Case No. 09-35582 in the amount of $699,035.69;

b. Proof of Claim Number 111, as amended, in Case No. 09-35582 in the amount of $699,035.69; and

c. Proof of Claim Number 113, as amended, in Case No. 09-35582 in the amount of $699,035.69.

18. The GIS Entities have also filed (i) Proof of Claim Number 118 in Case No. 09-35582 in an amount in excess of $500,000 for an unknown amount related to the tax return for the Debtors' consolidated tax group for the year ending December 31, 2008; (ii) Proof of Claim Number 119 in Case No. 09-35582 in an amount in excess of $500,000 for an unknown amount related to the tax return for the Debtors' consolidated tax group for the year ending December 31, 2008; and (iii) Proof of Claim Number 120 in Case No. 09-35582 in an amount in excess of $500,000 for an unknown amount related to the tax return for the Debtors' consolidated tax group for the year ending December 31, 2008 (collectively, the "Federal Tax Liability Claims").

19. The Debtors dispute that the GIS Entities have any right to recover for the Franchise Tax Liability Claims or the Federal Tax Liability Claims. Additionally, the Debtors dispute GIS's allegation that it has a legal basis to setoff the Franchise Tax Liability Claims or the Federal Tax Liability Claims against the Premiums.

**C.    The Settlement**

20. The Debtors and the GIS Entities have reached an agreement to settle the Franchise Tax Liability Claims, Federal Tax Liability Claims, GIS's setoff claims, and all other claims related to tax liability that could be asserted by the GIS Entities against the Debtors (the "Settlement"). All claims asserted by GIS in Cause No. 3:10-CV-00298-B pending in the United States District Court for the Northern District of Texas (the "GISI/FDIC Lawsuit") are reserved

by GIS, SAVE and EXCEPT a credit to the FDIC-Receiver in the amount of $187,000.00 against GIS's franchise tax indemnity claims. Further, in accordance with the terms and conditions set forth in a stipulation to be filed in the GIS/FDIC Lawsuit (the "GIS/FDIC Stipulation"), and upon the Texas Comptroller's issuance of a final Certificate of Good Standing for Tax Report Year 2009 (calendar 2008) and the retroactive reinstatement of GIS's Charter by the Texas Secretary of State, GIS shall non-suit and fully and finally release GIS's counts related to the Franchise Tax Liability Claims and the Federal Tax Liability Claims and release the FDIC-Receiver from all tax related claims.

21. The terms of the Settlement are:

a. The Debtors will: (i) acknowledge in a provision of the Agreed Order submitted in connection with the Motion that $187,000 of the $1,150,000.00 Preliminary Tax Payment is attributable to the tax liability of GIS and should be allocated accordingly by the Texas Comptroller; (ii) file an Amended Consolidated Texas Franchise Tax Report for 2009 "Privilege Period" (2008 calendar) with transmittal letter excluding GIS as a member of the consolidated group; and (iii) cooperate with GIS and the Texas Comptroller as reasonably required by them to return GIS to "Good Standing" for 2009 "Privilege Period" (2008 calendar) in order to permit the Texas Comptroller to request the reinstatement of GIS's Charter by the Texas Secretary of State.

b. The GIS Entities agree to release (i) the Federal Tax Liability Claims, (ii) the Franchise Tax Liability Claims, (iii) any administrative claims against the Debtors, (d) any claim to setoff against the Premiums, and (iv) any and all other claims the GIS Entities may hold against any of the Debtors (and the parties stipulate that no such other claims have been asserted or exist). GIS agrees to amend its pleading and/or

file a stipulation in Cause No. 3:10-CV-00298-B crediting Guaranty Bank or the FDIC-Receiver in the Receivership in the amount of $187,000 against GIS's franchise tax indemnity claim; and GIS shall release the FDIC-Receiver upon the conditions set forth in the Stipulation described above;[3] and

    c.    The GIS Entities will turn over any Premiums in their possession to the Debtors immediately upon the entry of the Agreed Order submitted in connection with this Motion, and the GIS Entities will promptly turn over any Premiums received after the date of such Agreed Order.

### III. RELIEF REQUESTED

22. By this Motion, the Debtors request that the Court enter an order, pursuant to Bankruptcy Code § 105(a) and Federal Rule of Bankruptcy Procedure 9019(a), approving the Settlement.

### IV. BASIS FOR RELIEF REQUESTED

23. The Court may, in its discretion, approve settlements in accordance with Federal Rule of Bankruptcy Procedure 9019(a). Fed. R. Bankr. P. 9019(a); *CFB-5, Inc. v. Cunningham*, 371 B.R. 175, 181 (N.D. Tex. 2007). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) (internal quotations omitted); *CFB-5*, 371 B.R. at 181; *In re Heritage Org., L.L.C.*, 375 B.R. 230, 259 (Bankr. N.D. Tex. 2007).

24. In deciding whether a settlement of litigation is "fair and equitable," the Court must make a well-informed decision, comparing the terms of the compromise with the likely rewards of litigation. *In re Cajun Elec.*, 119 F.3d at 355; *In re Heritage Org.*, 375 B.R. at 259.

---

[3] The release of claims by the GIS Entities against Guaranty Bank or the FDIC-Receiver is not subject to the jurisdiction of this Court, but is a condition to the Settlement and is referenced herein for disclosure purposes only.

The Court must evaluate and set forth in a comprehensible fashion: (i) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the litigation and any attendant expenses, inconvenience and delay, and (iii) all other factors bearing on the wisdom of the compromise. *In re Cajun Elec.*, 119 F.3d at 355-56; *In re Heritage Org.*, 375 B.R. at 259. The Court should also consider the best interest of the creditors, with proper deference to their reasonable views, and the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. *In re Cajun Elec.*, 119 F.3d at 356; *In re Heritage Org.*, 375 B.R. at 260.

25. It is unnecessary for the Court to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. *In re Heritage Org.*, 375 B.R. at 260. The Court need only make itself aware of relevant facts and law so that it may make an informed and intelligent decision. *In re Cajun Elec.*, 119 F.3d at 356.

26. Approval of the Settlement is fair and equitable and in the best interest of the estate. The Settlement will avoid litigation over complicated questions of law, including whether the GIS Entities are entitled to setoff their claims against the Premiums, and whether GFG is responsible to satisfy the GIS 2008 Franchise Tax Liability. Given the limited resources of the Debtors' estates, litigation over these issues will not benefit the estate or its creditors. Instead, such litigation will further delay the distribution of estate funds and increase the administrative costs of the estates. The Settlement will allow the Debtors' estates to benefit from the return of the Premiums, without reducing the assets available to creditors. If the Settlement is not approved, and in the case that the Debtors were unsuccessful in litigation against the GIS Entities, the GIS Entities would be entitled to setoff in excess of $187,000 against the Premiums. Furthermore, the Settlement is a product of arms-length bargaining between the Debtors and the

GIS Entities. For all of these reasons, the Settlement is in the best interest of the Debtors' estates.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (i) approving the Settlement, and (ii) granting the Debtors such other and further relief as is just and proper.

Dated: October 15, 2010.

**HAYNES AND BOONE, LLP**

By: */s/ Ian T. Peck*

Robert D. Albergotti
State Bar No. 00969800
Ian T. Peck
State Bar No. 24013306
Autumn D. Highsmith
State Bar No. 24048806
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: 214-651-5000
Facsimile: 214-651-5940

**ATTORNEYS FOR THE
DEBTORS-IN-POSSESSION**

**CERTIFICATE OF CONFERENCE**

I certify that, in addition to the agreement of the GIS Entities as reflected in the details of the Settlement, I have conferred with George McElreath for the United States Trustee, Steven Soll for the Federal Deposit Insurance Corporation, and Douglas Spelfogel for Wilmington Trust Company regarding the relief requested in the Motion. The Federal Deposit Insurance Corporation and the United States Trustee do not oppose such relief. I have not yet received a response from Wilmington Trust Company as to whether they oppose the relief requested in the Motion.

By: /s/ Ian T. Peck
Ian T. Peck

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served (i) via electronic mail or U.S. Mail, First Class, Postage Pre-Paid upon all entities on the Master Service List [Docket No. 284] and (ii) via electronic mail through the Court's electronic case filing system on this 15th day of October, 2010.

By: /s/ Ian T. Peck
Ian T. Peck

# EXHIBIT "A"

Guaranty Insurance Services, Inc.
Premium Returns for Customer:
Guaranty Financial Group
As of 3-15-10

| Customer Name | Account No | Policy No | Invoice | Eff date | Policy Type | Amount Rec'd from Carrier | Date Rec'd | Method of pmt from Carrier |
|---|---|---|---|---|---|---|---|---|
| Guaranty Financial Group Inc. | 7262 8049767 | | 150512 | 3/1/2009 | Commercial Property | 133.20 | 12/31/2009 | check |
| Guaranty Financial Group Inc. | 7262 65UENIX0417 | | 193622 | 10/23/2009 | Business Auto | 15,629.80 | 3/4/2010 | check |
| Guaranty Financial Group Inc. | 7262 RMP2082516819 | | 196977 | 10/23/2009 | Commercial Property | 329,272.29 | 11/20/2009 | check |
| Guaranty Financial Group Inc. | 7262 ECO1054186412 | | 198210 | 10/23/2009 | Umbrella(C) | 15,634.80 | 3/1/2010 | check |
| Guaranty Financial Group Inc. | 7262 B066468326A08 | | 203230 | 10/23/2009 | Commercial Employer Practice Liability | 9,508.99 | 12/23/2009 | check |
| Guaranty Financial Group Inc. | 7262 Q209125370 | | 210960 | 10/23/2009 | Umbrella(C) | 31,869.90 | 1/21/2010 | check |

Total Premiums to refund     402,048.98