# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| GUARANTY FINANCIAL GROUP INC., | § | CASE NO. 09-35582-bjh |
| *et al.,* | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

## STIPULATION REGARDING OBJECTION OF TRICADIA FINANCIALS RESTRUCTURING PARTNERS, LTD TO DEBTORS' AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

WHEREAS, on February 20, 2011, Guaranty Financial Group Inc. ("GFG"), Guaranty Group Ventures Inc. ("GGVI"), Guaranty Holdings Inc. I ("GHI"), and Guaranty Group Capital Inc. ("GGCI") (collectively, the "Debtors") filed their Amended Joint Plan of Liquidation for Guaranty Financial Group Inc., *et al.*, under Chapter 11 of the United States Bankruptcy Code (the "Plan");

WHEREAS, Federal Deposit Insurance Corporation, as Receiver for Guaranty Bank (the "FDIC-R") and Wilmington Trust FSB as Indenture Trustee ("Wilmington Trust") are parties to the settlement agreement embodied in the Plan;

WHEREAS, on April 18, 2011, Tricadia Financials Restructuring Partners, Ltd. ("Tricadia") filed its Objection of Tricadia Financials Restructuring Partners, Ltd to Debtors' Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (the "Tricadia Objection");

WHEREAS, Tricadia or its affiliated funds submitted or caused to be submitted the following Class 4 votes to reject the Plan (the "Negative Votes"): (i) Structured Credit Opportunities Fund II, L.P. in the amount of $600,000 submitted by Tricadia Capital

Management, LLC as Investment Manager; (ii) Mariner – Tricadia Credit Strategies Master

Fund, Ltd. in the amount of $1,400,000 submitted by Tricadia Capital Management, LLC as

Investment Manager; and (iii) Tricadia Financials Restructuring Partners, Ltd. in the amount of

$52,953,300 submitted by US Bank National Association as record holder.

WHEREAS, the Debtors, the FDIC-R, Wilmington Trust, and Tricadia (collectively, the

"Parties") have reached an agreement in resolution of the Tricadia Objection that involves

certain modifications to the Plan and the Liquidation Trust Agreement.

**NOW, THEREFORE; IT IS HEREBY STIPULATED AND AGREED THAT:**

1.      The recitals set forth above shall be incorporated by this reference, as if fully set

forth herein.

2.      Subject to the terms contained herein, the Plan shall be modified as follows:[1]

    a.      The second paragraph of Article X.A of the Plan shall be deleted and
replaced with the following three paragraphs:

> The Rights of Action retained by the Liquidation Trust under Bankruptcy
> Code § 1123(b)(3) specifically include, but are not limited to, all Rights of
> Action the Debtors or their Estates may hold against Temple-Inland or its
> former officers and directors (including the claims assigned to the Debtors
> pursuant to the next paragraph), Insider and Employee Avoidance Actions,
> and other Avoidance Actions. Claims that are reserved or reserved and
> assigned by the Debtors have been specifically set forth in the Disclosure
> Statement.
>
> The FDIC-Receiver will assign to the Debtors all of the FDIC-Receiver's
> claims related to the divestiture of GFG and Forestar Real Estate Group,
> Inc. ("Forestar") from Temple-Inland (the "Spin-Off") it has against
> Temple-Inland,[2] Temple-Inland's directors and officers, Temple-Inland's
> outside professionals, and Debtors' former directors and officers and
> outside professionals (the "Spin-Off Claims"). In addition, the FDIC-

---

[1] The Parties may agree to such different or additional Plan modifications as necessary to facilitate the
agreement of the Parties.

[2] Temple-Inland shall include any affiliates and subsidiaries of Temple-Inland with the exception of
Guaranty Bank, its subsidiaries and the Debtors.

NYC_1126726.1

Receiver will assign to the Debtors its claims against Temple-Inland for any tax refunds, tax benefits and/or tax related entitlements whatsoever including, but not limited to, net operating losses, whether or not related to the Spin-Off (the "Temple-Inland Tax Claims" and together with the Spin-Off Claims, the "Assigned Claims"). By making this assignment, the FDIC-Receiver is not making any representations or warranties about the existence, merit or validity of the Assigned Claims. The Assigned Claims do not include any claims the FDIC-Receiver has against (i) any of the former directors and officers of Guaranty Bank and/or its subsidiaries; (ii) any third parties involved in the sales of mortgage backed securities to Guaranty Bank; (iii) any professional or service provider that caused a loss to Guaranty Bank unrelated to the Spin-Off; and (iv) any of the former directors and officers of the Debtors and/or their subsidiaries for their actions unrelated to the Spin-Off. Actions unrelated to the Spin-Off include but are not limited to all actions relating solely to the management of Guaranty Bank. FDIC-Receiver and Debtors agree that "all actions relating solely to the management of Guaranty Bank" include but are not limited to any actions relating to Guaranty Bank's purchase of mortgage backed securities and claims relating to such actions, against (i) the former directors and officers of Guaranty Bank and its subsidiaries; (ii) the former directors and officers of Debtors and their subsidiaries; and (iii) Temple-Inland and Temple-Inland's directors and officers. Except as expressly provided for herein, nothing hereunder shall be deemed to limit the respective claims of the Debtors and FDIC-Receiver, all of which are otherwise reserved. In consideration for the Assigned Claims, Debtors shall pay to the FDIC-Receiver fifteen percent (15%) of any Net Recovery. "Net Recovery" means the amount Debtors obtain for any claims asserted relating to the Spin-Off, and the Temple-Inland Tax Claims, minus the fees and costs paid by the Debtors to prosecute such claims and fees of the Liquidation Trustee relating thereto. The Debtors' rights and obligations hereunder shall be assigned to and assumed by the Liquidation Trust under the Debtors' amended plan of liquidation.

Neither the FDIC-Receiver nor the Debtors shall take any action to bar the other from pursuing claims against Temple-Inland owned by or assigned to the other party; however, to the extent a dispute arises between the parties regarding the ownership of any claim against Temple-Inland, or any third party relating to Temple-Inland, the Debtors and the FDIC-Receiver reserve all rights and remedies in connection with such dispute.

b. The definition of Rights of Action contained in Plan Exhibit "A" Glossary of Defined Terms shall be deleted and replaced with the following:

Rights of Action: Any and all claims, debts, demands, rights, defenses, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers, privileges (including attorney/client privilege), licenses, and franchises of any kind or character whatsoever,

g.      The second sentence of the second paragraph of Article V.H.3 of the Plan shall be deleted and replaced with the following sentence:

> The sole responsibilities of the Special Purpose Liquidation Agent shall be: (i) maintaining the Professional Fee Reserve; (ii) making Distributions to Holders of Allowed Professional Fee Claims pursuant to Article II.A of the Plan, with the exception of any Professional Fee Claims filed by Tricadia; (iii) taking actions to recover the Tax Refunds; (iv) receiving the Tax Refunds; and (v) making Distributions to the FDIC-Receiver pursuant to Article IV.C of the Plan, including distribution of the Tax Refunds to the FDIC-Receiver pursuant to Article IV.C.2 of the Plan.

h.      The first sentence of the third paragraph of Article V.H.3 of the Plan shall be deleted and replaced with the following sentence:

> Within ten (10) days after completion of all Distributions to Holders of Professional Fee Claims, with the exception of any Professional Fee Claims filed by Tricadia, and payment of any fees and expenses of the Special Purpose Liquidation Agent and his professionals, the Special Purpose Liquidation Agent shall return any unused portion of the Professional Fee Reserve to the Liquidation Trustee to be administered in accordance with the Liquidation Trust Agreement and Article V.H of the Plan.

i.      The definition of Professional Fee Reserve contained in Plan Exhibit "A" Glossary of Defined Terms shall be deleted and replaced with the following:

> The reserve established by the Special Purpose Liquidation Agent on the Effective Date to pay Allowed Professional Fee Claims, with the exception of any Professional Fee Claims filed by Tricadia, and expenses of the Special Purpose Liquidation Agent pursuant to Article V.H.3 of the Plan.

3.      Subject to qualification as provided in this Paragraph 3 and the Liquidation Trust Agreement ("Revised Liquidating Trust Agreement") as modified and annexed hereto as Exhibit "A", Mr. Kenneth Tepper shall be appointed to serve as the Liquidation Trustee (as contemplated by Plan Exhibit "A" Glossary of Defined Terms, ¶ 90), subject to (i) Mr. Tepper's execution of the Revised Liquidation Trust Agreement substantially in the form annexed hereto and subject to approval by the Court; (ii) Mr. Tepper filing an affidavit of disinterestedness confirming that he had no disqualifying conflict of interest; and (iii) the posting of a bond in the amount of $10

known or unknown, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, including (a) rights of setoff, counterclaim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (b) claims pursuant to 11 U.S.C. § 362; (c) such claims and defenses as fraud, mistake, duress, and usury; (d) all Avoidance Actions; and (e) claims, actions, and causes of action assigned to the Debtors pursuant to the Plan, including claims against Temple-Inland assigned to the Debtors Trust by the FDIC-Receiver pursuant to Plan Article X.A

c.      The definition of Release Parties contained in Plan Exhibit "A" Glossary of Defined Terms shall be deleted and replaced with the following:

Release Parties: (i) Dennis Faulkner, individually and in his capacity as Chief Restructuring Officer and director of the Debtors, the FDIC-Receiver, Guaranty Bank, Compass Bank, Wilmington Trust, and each of their respective shareholders, officers, directors, and professionals, including lawyers, and the Debtors (but not their prepetition shareholders, officers, directors, and professionals not engaged in these Chapter 11 Cases) and their Professionals in these Chapter 11 Cases; and (ii) Tricadia, but only with respect to these Chapter 11 Cases.

d.      The following sentence shall be added at the end of Article IX.D:

This provision does not release claims that the FDIC-Receiver has against Tricadia unrelated to GFG, the Plan, or the Chapter 11 Cases.

e.      The following definition of Tricadia shall be added to Plan Exhibit "A" Glossary of Defined Terms:

Tricadia: Tricadia Financials Restructuring Partners, Ltd., Tricadia Capital Management, LLC, Structured Credit Opportunities Fund II, L.P., Mariner – Tricadia Credit Strategies Master Fund, Ltd., and any other affiliated entity or fund that holds or manages trust preferred securities (or any other debt or equity) of any trust wholly owned by the Debtors, and each of their shareholders, officers, directors and professionals, including lawyers.

f.      The second sentence of the first paragraph of Article V.H.3 of the Plan shall be deleted and replaced with the following sentence:

The Professional Fee Reserve shall be used solely for distributions to Holders of Allowed Professional Fee Claims, with the exception of any Professional Fee Claims filed by Tricadia.

million payable to the Liquidation Trust. All references to Wilmington Trust solely as the Liquidation Trustee in the Plan shall be deemed to mean Mr. Tepper. The afore-referenced shall not affect any other references to Wilmington Trust under the Plan or Liquidation Trust Agreement.

4. Tricadia reserves the right to seek substantial contribution claims pursuant to 11 U.S.C. § 503(b)(3), (b)(4).[3] Any allowed substantial contribution claims of Tricadia will be satisfied from funds transferred to the Liquidation Trust pursuant to the Plan. In addition, to the extent that there is a shortfall in the Professional Fee Reserve to satisfy Allowed Professional Fee Claims under the Plan, such additional amounts, to the extent allowed, shall be funded from funds transferred to the Liquidation Trust pursuant to the Plan.

5. The Effective Date of the Plan Support Agreement is hereby extended to June 15, 2011. The Parties agree that the terms of this Stipulation will be incorporated into any plan that the Debtors may file.

6. The Revised Liquidation Trust Agreement attached hereto as *Exhibit A* shall be the operative Liquidation Trust Agreement pursuant to Article V.H. of the Plan. The within Stipulation is expressly contingent upon the approval of the Revised Liquidation Trust Agreement in the form annexed hereto and Confirmation of the Plan. In the event that the Revised Liquidation Trust Agreement is not approved, the Stipulation shall be void and without force and effect.

7. Tricadia agrees that (i) the Tricadia Objection is deemed withdrawn, with prejudice, upon the full execution of the Stipulation; (ii) the Negative Votes are deemed to be changed to affirmative votes in favor of the Plan; (iii) holders of Class 4 Claims that submitted

---

[3] Under the Plan, Wilmington Trust reserved the right to seek a substantial contribution claim under Section 503 of the Bankruptcy Code.

NYC_1126726.1

Negative Votes shall retain their holdings until the Effective Date of the Plan; (iv) Tricadia is deemed to be a party to the Plan Support Agreement; and (v) it will cooperate with and affirmatively support the Debtors' efforts to achieve Plan Confirmation.

8.      All discovery in connection with the Tricadia Objection shall be stayed pending Court consideration and entry of an Order approving the further amended Plan.

[Remainder of Page Intentionally Blank]

**STIPULATED AND AGREED TO** as of April _28_, 2011:

**OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.**

By: _Steven B. Soll_

Steven B. Soll
(Admitted *Pro Hac Vice*)
230 Park Avenue
New York, New York 10169
Telephone:  212-661-9100
Facsimile:  212-682-6104

*Counsel for the Federal Deposit Insurance Corporation, as Receiver*

**HAYNES AND BOONE, LLP**

By: _Ian T. Peck_

Robert D. Albergotti (TX Bar No. 00969800)
Ian T. Peck (TX Bar No. 24013306)
Autumn D. Highsmith (TX Bar No. 24048806)
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219-7672
Telephone:  214-651-5000
Facsimile:  817-348-5940

*Counsel for the Debtors*

**DUANE MORRIS LLP**

By: _____

Gerard Catalanello (Admitted *Pro Hac Vice*)
Pat Matusky (Admitted *Pro Hac Vice*)
1540 Broadway
New York, NY 10036-4086
Telephone:  212 692 1000
Facsimile:  212 692 1020

*Counsel for Tricadia Financials Restructuring Partners, Ltd.*

**FOLEY & LARDNER LLP**

By: _____

Douglas E. Spelfogel (Admitted *Pro Hac Vice*)
90 Park Avenue
New York, New York 10016-1314
Telephone:  212-338-3566

*Counsel for Wilmington Trust FSB, as Indenture Trustee and not individually*

**STIPULATED AND AGREED TO** as of April _28_, 2011:

**OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.**

By: _____

Steven B. Soll
(Admitted *Pro Hac Vice*)
230 Park Avenue
New York, New York 10169
Telephone: 212-661-9100
Facsimile: 212-682-6104

*Counsel for the Federal Deposit Insurance Corporation, as Receiver*

**HAYNES AND BOONE, LLP**

By: _____

Robert D. Albergotti (TX Bar No. 00969800)
Ian T. Peck (TX Bar No. 24013306)
Autumn D. Highsmith (TX Bar No. 24048806)
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219-7672
Telephone: 214-651-5000
Facsimile: 817-348-5940

*Counsel for the Debtors*

**DUANE MORRIS LLP**

By: _____

Gerard Catalanello (Admitted *Pro Hac Vice*)
Pat Matusky (Admitted *Pro Hac Vice*)
1540 Broadway
New York, NY 10036-4086
Telephone: 212 692 1000
Facsimile: 212 692 1020

*Counsel for Tricadia Financials Restructuring Partners, Ltd.*

**FOLEY & LARDNER LLP**

By: _____

Douglas E. Spelfogel (Admitted *Pro Hac Vice*)
90 Park Avenue
New York, New York 10016-1314
Telephone: 212-338-3566

*Counsel for Wilmington Trust FSB, as Indenture Trustee and not individually*

**STIPULATED AND AGREED TO** as of April 28, 2011:

**OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.**

By: _____

Steven B. Soll
(Admitted *Pro Hac Vice*)
230 Park Avenue
New York, New York 10169
Telephone: 212-661-9100
Facsimile: 212-682-6104

*Counsel for the Federal Deposit Insurance Corporation, as Receiver*

**HAYNES AND BOONE, LLP**

By: _____

Robert D. Albergotti (TX Bar No. 00969800)
Ian T. Peck (TX Bar No. 24013306)
Autumn D. Highsmith (TX Bar No. 24048806)
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219-7672
Telephone: 214-651-5000
Facsimile: 817-348-5940

*Counsel for the Debtors*

**DUANE MORRIS LLP**

By: _____

Gerard Catalanello (Admitted *Pro Hac Vice*)
Pat Matusky (Admitted *Pro Hac Vice*)
1540 Broadway
New York, NY 10036-4086
Telephone: 212 692 1000
Facsimile: 212 692 1020

*Counsel for Tricadia Financials Restructuring Partners, Ltd.*

**FOLEY & LARDNER LLP**

By: _____

Douglas E. Spelfogel (Admitted *Pro Hac Vice*)
90 Park Avenue
New York, New York 10016-1314
Telephone: 212-338-3566

*Counsel for Wilmington Trust FSB, as Indenture Trustee and not individually*

NYC_1126726.1

**EXHIBIT "A"**

# LIQUIDATION TRUST AGREEMENT

This Liquidation Trust Agreement (the "Liquidation Trust Agreement"), is being entered into as of May ___, 2011, by and between Guaranty Financial Group Inc., Guaranty Group Ventures Inc., Guaranty Holdings Inc. I, and Guaranty Group Capital Inc., debtors-in-possession in the Chapter 11 Cases (collectively, the "Debtors," and each individually a "Debtor") in the chapter 11 cases pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), Case Number 09-35582-bjh (jointly administered) and Kenneth L. Tepper, in his capacity as trustee under this Liquidation Trust Agreement (the "Liquidation Trustee"). Capitalized terms not otherwise defined herein shall have the meaning ascribed under the Plan, as defined herein. The term "Plan" as used herein shall mean Debtors' Amended Joint Plan of Liquidation For Guaranty Financial Group Inc., et al., Under Chapter 11 of the United States Bankruptcy Code filed on February 10, 2011, including all of the modifications made thereto as set forth in that certain Stipulation Regarding Objection of Tricadia Financials Restructuring Partners, Ltd. to Debtors' Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code Dated April ___, 2011. The Plan provides, *inter alia*, for:

      (a)     The transfer (the "Transfer") of all right, title and interest of the Debtors in the Liquidation Assets to the Liquidation Trust on the Effective Date for distribution to the holders of Allowed Claims except for the Allowed FDIC-Receiver Claims and the Allowed Professional Fee Claims (the "Beneficiaries") pursuant to and in accordance with this Liquidation Trust Agreement, the Plan and the order confirming the Plan (the "Confirmation Order");

      (b)     The treatment of the Transfer for federal income tax purposes as a taxable sale or exchange of the Liquidation Trust Assets by the Debtors to the Beneficiaries;

      (c)     The treatment for all purposes, including federal income tax purposes, of the Beneficiaries as the deemed owners of the Liquidation Trust Assets and as the grantors of the Liquidation Trust;

      (d)     The treatment of the Liquidation Trust as a grantor trust for federal income tax purposes;

      (e)     The valuation of the Liquidation Trust Assets by the Liquidation Trustee and the use of such valuations for all federal income tax purposes;

      (f)     The management of the Liquidation Trust Assets by the Liquidation Trustee; and

      (g)     The distribution of the Liquidation Trust Assets or the proceeds thereof to the Beneficiaries as set forth in the Plan, the Confirmation Order and this Liquidation Trust Agreement.

Unless the context otherwise requires, all capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order and in consideration of the mutual agreements of the parties contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

# ARTICLE I
# DECLARATION OF TRUST

1.1.    Purpose of the Liquidation Trust.  The Debtors and the Liquidation Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, to the extent incorporated in this Liquidation Trust Agreement, hereby establish the Liquidation Trust on behalf of and for the sole benefit of the Beneficiaries and for the sole purpose of liquidating the Liquidation Trust Assets and distributing the Liquidation Trust Assets to the Beneficiaries pursuant to the Plan in accordance with Treas. Reg. § 301.7701-4(d).  The Liquidation Trust has no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the sole purpose of the Liquidation Trust.  It shall not be the objective or purpose of this Liquidation Trust to, and the Liquidation Trustee shall have no authority to, conduct a trade or business except as reasonable and necessary to, and consistent with, the liquidation of the Liquidation Trust Assets.  In particular, the Liquidation Trust, through the Liquidation Trustee, will do the following: (a) accept and place all Liquidation Trust Assets into the Liquidation Trust; (b) to the extent feasible, reduce all remaining Liquidation Trust Assets, including, but not limited to, Rights of Action, to Cash; (c) object to and resolve all Disputed Claims; (d) make all Distributions in accordance with the Plan to the extent such Distributions are to be made from the Liquidation Trust Assets; (e) retain professionals and other agents; and (f) take such steps as are reasonable and necessary to accomplish the Liquidation Trust's purpose, all as provided in, and subject to the terms and provisions of, the Plan, the Confirmation Order and this Liquidation Trust Agreement.  The Liquidation Trust Assets shall be held for the exclusive and sole benefit of the Beneficiaries and shall only be used to fund Distributions to such Beneficiaries in accordance with the Plan and to fund payment of costs, fees, and expenses incurred in connection with the administration of the Liquidation Trust or the Plan.

1.2.    Rights of Debtors.  The Debtors shall have no claim to or right or interest in, whether direct, residual, contingent or otherwise, in the Liquidation Trust Assets once such assets have been transferred to the Liquidation Trust.

1.3.    Name of the Liquidation Trust.  The Liquidation Trust established hereby shall be known as the "GFGI Liquidation Trust."  In connection with the exercise of his powers, the Liquidation Trustee may use the name or such variation thereof as he sees fit, and may transact the affairs of the Liquidation Trust in such name.

1.4.    Transfer of Assets to Create Liquidation Trust.  Effective as of the Effective Date, the Debtors hereby grant, release, assign, transfer, convey and deliver to the Liquidation Trustee and his successors, to be held in trust and to be applied as specified in the Plan, the Confirmation Order, and this Liquidation Trust Agreement the Liquidation Trust Assets.

Through the transfer of each Estate's assets, and except as otherwise provided herein or in the Plan, such assets are Liquidation Trust Assets and the Liquidation Trust has the sole and exclusive right, title and interest in and possession of the Liquidation Trust Assets.

1.5.    Acceptance by Liquidation Trustee.  The Liquidation Trustee hereby accepts and confirms the following: (a) the appointment to serve as Liquidation Trustee; (b) the Transfer of the Liquidation Trust Assets, and all right, title and interest therein, to the Liquidation Trust; and (c) the obligations and duties imposed on him by this Liquidation Trust Agreement.  The Liquidation Trustee agrees to receive, hold, administer and distribute the Liquidation Trust Assets and the income derived therefrom, and to reconcile, administer and satisfy all Claims, with the exception of the FDIC-Receiver Claims and Professional Fee Claims, pursuant to the terms of the Plan, the Confirmation Order and this Liquidation Trust Agreement.

## ARTICLE II
## TERMINATION OF TRUST

2.1.    Maximum Term.  The Liquidation Trust shall terminate no later than the third anniversary of the Effective Date (the "Initial Liquidation Trust Term"); provided, however, that, if necessary to accomplish the Liquidation purpose of the Liquidation Trust, the Liquidation Trustee may extend the term of the Liquidation Trust for up to an additional two years (the "Supplemental Liquidation Trust Term") by (a) filing a notice of his intent to extend the term of the Liquidation Trust with the Bankruptcy Court, (b) serving such notice on the United States Trustee, (c) providing the United States Trustee at least ten (10) days to object to the requested extension prior to the termination of the Initial Liquidation Trust Term, and (d) receiving approval for the Supplemental Liquidation Trust Term from the Bankruptcy Court within six months of the beginning of the Supplemental Liquidation Trust Term.  The Liquidation Trustee may, if the Initial Liquidation Trust Term has expired, seek entry of an order from the Bankruptcy Court providing for a reinstatement and implementation of the Supplemental Liquidation Trust Term.  In addition, notwithstanding anything contained herein to the contrary, the Liquidation Trustee may seek additional extensions beyond the referenced terms from the Bankruptcy Court for good cause shown.  That term shall automatically be extended through ninety (90) days after a final determination by the Court that the applicable term has expired.

2.2.    Winding Up and Discharge of the Liquidation Trustee.  For purposes of winding up the affairs of the Liquidation Trust at its termination, the Liquidation Trustee shall continue to act as Liquidation Trustee until his duties have been fully discharged.  After doing so, the Liquidation Trustee, his agents, professionals and employees, if any, shall have no further duties or obligations hereunder, except as required by this Liquidation Trust Agreement, the Plan, the Confirmation Order or applicable law concerning the termination of a trust.

# ARTICLE III
## OBLIGATIONS OF THE LIQUIDATION TRUSTEE

3.1.    Establishment and Maintenance of Accounts, Reserves and Escrows.

    3.1.1.    Initial Establishment of Accounts and Reserves.  On the Effective Date or as soon thereafter as practicable, the Liquidation Trustee shall establish the following accounts and reserves:

        (a)    Distribution Fund:    One or more general accounts (the "Distribution Fund") into which shall be deposited, to the extent sufficient assets are available, Cash for Distributions to the Beneficiaries pursuant to this Liquidation Trust Agreement and the Plan.

        (b)    Disputed Claims Reserve:  An account or accounts, designated as a "Disputed Claims Reserve," as described more fully in Section 3.2 below (the "Disputed Claims Reserve").

        (c)    Wind-Down Reserve Account:    An account, designated as a "Wind-Down Reserve Account," as described more fully in Section 3.3 below.

    3.1.2.    Subsequent Establishment of Accounts, Reserves and Escrows.  On or after the Effective Date, the Liquidation Trustee (i) shall establish and maintain such additional accounts, reserves and escrows, to the extent sufficient assets are available, as may be required by applicable law or by order of a court of competent jurisdiction, and (ii) may establish and maintain such additional accounts, reserves and escrows as he deems necessary or desirable to carry out the provisions of the Plan and this Liquidation Trust Agreement.

    3.1.3.    Amounts Deposited in Reserves.  The amounts to be initially deposited in the reserves shall be established by the Liquidation Trustee consistent with the terms of the Plan.  Changes in the amounts maintained in the reserves may be made at any time thereafter in the discretion of the Liquidation Trustee.  The Wind-Down Reserve Account shall be maintained at Wilmington Trust Company FSB ("WTC").  In addition, all funds collected and/or maintained by the Liquidation Trust as provided under this Liquidating Trust Agreement and Section 3 shall be maintained in an account at WTC.

3.2.    Disputed Claims Reserve.

    3.2.1.    Prior to making each of the Distributions under the Plan, the Liquidation Trustee shall create and fund, to the extent that sufficient assets are available, one or more, as appropriate, Disputed Claims reserves (the "Disputed Claims Reserves") with an amount of Cash equal to the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such date if such Disputed Claims were Allowed Claims; provided, however, that the Liquidation Trustee may at any time file a motion(s) pursuant to section 502(c) of the Bankruptcy

Code for an order(s) estimating and limiting the amount of Cash which shall be deposited in any Disputed Claims Reserve in respect of any Disputed Claims, with notice and an opportunity to be heard to the affected holders of such Disputed Claims.

3.2.2.  After a Final Order has been entered or other final resolution has been reached with respect to any Disputed Claim for which Cash was reserved in a Disputed Claims Reserve, the balance, if any, of Cash remaining in such Disputed Claims Reserve on account of such Claim, after making the Distribution, if any, to which the holder of such Claims became entitled by virtue of such Final Order or other final resolution, shall be transferred to the Distribution Fund.

3.3.  <u>Wind-Down Reserve Account</u>.

3.3.1.  On the Effective Date (or as soon thereafter as practicable), the Liquidation Trustee shall, pursuant to and consistent with the provisions of the Plan, establish the Wind-Down Reserve Account, which shall be funded with such amounts as the Liquidation Trustee determines in its discretion are necessary and appropriate to cover the estimated costs of the Liquidation Trustee in connection with its duties and obligations under the Liquidation Trust Agreement and the Plan, Plan administration costs, costs of holding and liquidation any non-Cash property, and prosecution of any and all Rights of Action and other litigation consistent with this Liquidation Trust Agreement and the Plan, including, but not limited to, taxes and professional fees, and sufficient reserves to cover such costs going forward, provided that the Wind-Down Reserve Account shall initially be funded with $5.0 million and shall thereafter maintain a minimum funding balance of not less than $2.5 million unless otherwise directed by the Oversight Committee.  The Wind-Down Reserve Account shall be administered pursuant to the Plan and this Liquidation Trust Agreement for purposes of providing funds necessary to cover the ordinary and reasonable costs, expenses and obligations to be incurred in administering the Liquidation Trust and the Plan as provided for hereunder and under the Plan.

3.3.2.  In connection with making a Distribution of Cash or other assets under the Plan, if the Liquidation Trustee determines, in his sole discretion, that any excess Cash is available from the Wind-Down Reserve Account (the "Excess Wind-Down Reserve Amount"), the Liquidation Trustee may transfer the Excess Wind-Down Reserve Amount to the Distribution Fund for subsequent Distribution to the Beneficiaries pursuant to the terms of the Plan.

3.4.  <u>Use of Assets</u>.  All Cash or other property held or collected by the Liquidation Trustee shall be used solely for the purposes contemplated by the Plan or this Liquidation Trust Agreement.

3.5.  <u>Distributions</u>.  The Liquidation Trustee will distribute at least annually to the Beneficiaries any net income of the Liquidation Trust plus all net proceeds from the liquidation of the Liquidation Trust Assets provided that the Wind-Down Reserve Account

d-1919232

shall maintain such minimum funds as provided for in Section 3.3.1 of this Liquidation Trust Agreement and such distributions hereunder shall be in excess of the amounts reasonably necessary to maintain the value of the Liquidation Trust Assets or to meet claims or contingent liabilities (including Disputed Claims).

## ARTICLE IV
## POWERS AND DUTIES OF THE LIQUIDATION TRUSTEE

4.1.     <u>Duties of Liquidation Trustee</u>.  The Liquidation Trustee shall have such duties and responsibilities as are specified in the Plan, the Confirmation Order and this Liquidation Trust Agreement.

4.2.     <u>Authority of Liquidation Trustee</u>.   Subject to Section 6.3.3 herein, the Liquidation Trust and the Liquidation Trustee, as the representative of each Estate, shall be vested with the property, rights, interests, and powers of the Debtors as specified hereunder, in the Plan or the Confirmation Order.  The Liquidation Trustee shall make continuing efforts to dispose of the Liquidation Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidation Trust.  Consistent with this Section 4.2, the Liquidation Trustee's rights and authority include, without limitation, all of the following, to be rendered under the oversight and in consultation with the Oversight Committee as provided under Section 6.3.3 below:

> 4.2.1.  exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any officer, director or shareholder of the Debtors with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders; including, without limitation, amendment of the certificates of incorporation and by-laws of the Debtors, merger of any Debtor into another Debtor and the dissolution of any Debtor;

> 4.2.2.  maintain escrows and other accounts, make Distributions and take other actions consistent with the Plan and the implementation hereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Debtors or the Liquidation Trustee, even in the event of the dissolution of the Debtors;

> 4.2.3.  collect, receive, control, manage and dispose of all Liquidation Trust Assets pursuant to the Plan for the benefit of the Beneficiaries who may receive Distributions under the Plan and administer the winding-up of the affairs of the Debtors including, but not limited to, closing the Chapter 11 Cases;

> 4.2.4.  act as custodian of the Liquidation Trust Assets and liquidate and reduce such assets to Cash at such time as the Liquidation Trustee deems appropriate to accomplish the purpose of the Liquidation Trust, in accordance with the terms of the Plan and the Liquidation Trust Agreement;

4.2.5.  calculate and pay all Distributions required or permitted to be made under the Plan, this Liquidation Trust Agreement and/or orders of the Bankruptcy Court;

4.2.6.  employ, supervise and compensate attorneys, accountants, financial advisors and other professionals or other persons retained to represent the interests of and serve on behalf of the Liquidation Trust (the "Trust Professionals"), and waive any conflicts of interest as deemed necessary or appropriate in his discretion.  The Liquidation Trustee may commit the Liquidation Trust to and shall pay such Trust Professionals reasonable compensation for services rendered and expenses incurred.  A law firm or other professional shall not be disqualified from being employed by the Liquidation Trustee solely because of its current or prior retention as counsel or professional to the Debtors in the Chapter 11 Cases;

4.2.7.  file such tax returns as may be required by federal, state or local taxing authorities and consistent with the treatment of the Liquidation Trust as a grantor trust for federal income tax purposes;

4.2.8.  subject to Section 6.3.3 of this Liquidation Trust Agreement, object to or seek to recharacterize, reclassify or subordinate Claims filed against any of the Debtors or their Estates, excluding the FDIC-Receiver Claims and the Professional Fee Claims, on any basis, and, to defend, compromise and/or settle any Claims without the necessity of approval of the Bankruptcy Court, and/or to seek Court approval for any Claims settlements, to the extent thought appropriate by the Litigation Trustee or to the extent such approval is required by prior order of the Bankruptcy Court;

4.2.9.   seek estimation of contingent or unliquidated Claims, excluding the FDIC-Receiver Claims and the Professional Fee Claims, under section 502(c) of the Bankruptcy Code;

4.2.10. seek determination of tax liability under section 505 of the Bankruptcy Code except to the extent such right has been assigned to the FDIC-Receiver under the Plan;

4.2.11. subject to Section 6.3.3 of this Liquidation Trust Agreement, prosecute, settle, dismiss, abandon or otherwise dispose of turnover actions under sections 542 and 543 of the Bankruptcy Code;

4.2.12. subject to Section 6.3.3 of this Liquidation Trust Agreement, prosecute, settle, dismiss, abandon or otherwise dispose of any and all Rights of Action or any and all other matters of the Debtors or their Estates that it retains pursuant to Article X of the Plan, including, without limitation, all Rights of Action arising under sections 510(c), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code in accordance with section 1123(b)(3)(B) of the Bankruptcy Code;

4.2.13. invest Cash in accordance with § 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Bankruptcy Court and as deemed appropriate by the Liquidation Trustee;

4.2.14. collect any accounts receivable or other claims and assets of the Debtors or the Estates not otherwise disposed of pursuant to the Plan;

4.2.15. enter into any agreement or execute any document required by or consistent with the Plan and perform all of the obligations of the Debtors or the Liquidation Trustee thereunder;

4.2.16. pay all expenses and make other necessary payments relating to the Liquidation Trust Assets;

4.2.17. utilize trust assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs it deems necessary or advisable to insure the acts and omissions of the Liquidation Trustee;

4.2.18. seek the examination of any entity under Bankruptcy Rule 2004;

4.2.19. perform any and all acts necessary or appropriate for the conservation and protection of the Liquidation Trust Assets;

4.2.20. maintain appropriate books and records (including financial books and records);

4.2.21. such other actions as may be reasonably required in furtherance of the Liquidation Trustee's duties and responsibilities under this Liquidation Trust Agreement and the Plan;

4.2.22. pay fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and to file with the Bankruptcy Court and serve on the United States Trustee monthly financial reports until such time as such reports are no longer required, a Final Decree is entered closing these Cases or the Cases are converted or dismissed, or the Bankruptcy Court orders otherwise; and

4.2.23. file with the Bankruptcy Court and serve upon the Post-Confirmation Service List, within 25 days after the end of each month, a monthly report setting forth (i) the receipt and disposition by the Liquidation Trustee of property of the Estates or the Debtors during the prior month, including the disposition of funds in the Liquidation Trust, the Wind-down Reserve and Distribution Fund; (ii) all Disputed Claims resolved by the Liquidation Trustee during such period and all remaining Disputed Claims; (iii) all known material Liquidation Trust Assets remaining to be disposed of; (iv) the status of Rights of Action and other causes of action; (v) an itemization of all expenses the Liquidation Trustee anticipates will become due and payable within the subsequent three months; and (vi) the Liquidation Trustee's forecast of cash receipts and expenses for the subsequent three months; and take any and all other actions necessary or appropriate to

8

implement or consummate the Plan and the provisions of this Liquidation Trust Agreement.

4.3.     <u>Limitations on the Liquidation Trustee</u>.  Notwithstanding anything in this Liquidation Trust Agreement to the contrary, the Liquidation Trustee, in his capacity as such, shall not do or undertake any of the following:  (i) guaranty any debt; (ii) loan Liquidation Trust Assets; (iii) purchase Liquidation Trust Assets from the Liquidation Trust; (iv) transfer Liquidation Trust Assets to another trust with respect to which the Liquidation Trustee serves as trustee; or (v) except as otherwise reasonably necessary to maintain the value of the Liquidation Trust Assets and to further the Liquidation purpose of the Liquidation Trust, invest Liquidation Trust Assets other than in short-term, liquid investments, such as bank demand and time deposits, short-term bank or saving institution certificates of deposit or Treasury Bills.

4.4.     <u>Liquidation Trustee and Conflicts of Interest</u>.  If the Liquidation Trustee determines, in the exercise of his reasonable discretion, that he has a material conflict of interest with respect to the settlement of a Claim, the resolution or prosecution of a Right of Action or any other matter, the Liquidation Trustee shall notify the Oversight Committee, who may select a designee to act on behalf of the Liquidation Trust solely with respect to such matter (the "Designee"), with such Designee's authority to act on behalf of the Liquidation Trust to terminate upon the matter's conclusion.  If the Designee files a pleading, motion or other filing with a court or tribunal on behalf of the Liquidation Trust, it shall do so in its own name as "Designee of the GFGI Liquidation Trust."

4.5.     <u>Register of Beneficiaries</u>.  The Liquidation Trustee shall obtain the Claims Register as of the initial Distribution Date from the Clerk and shall use the Claims Register to identify the names, addresses, and amounts of Claims of the Beneficiaries (the "Liquidation Register").  The Liquidation Trustee shall maintain the Liquidation Register , and shall add thereto information regarding whether each Claim of each Beneficiary is Allowed or Disallowed , and any informational changes  to the Liquidation Register will be made upon notification proper under this Liquidation Trust Agreement submitted to the Liquidation Trustee.  The Liquidation Trustee shall not be liable for relying on the accuracy of the Liquidation Register, provided that he has properly maintained the Register in accordance with this Liquidation Trust Agreement.

4.6.     <u>Books and Records</u>.  The Liquidation Trustee also shall maintain in respect of the Liquidation Trust and the Beneficiaries, books and records relating to the Liquidation Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Liquidation Trust in such detail and for such period of time as may be necessary to enable him to make full and proper reports in respect thereof.  Such books and records shall be maintained in a manner consistent with the Plan and this Liquidation Trust Agreement.  Except as expressly provided in this Liquidation Trust Agreement, the Plan or the Confirmation Order, nothing in the Liquidation Trust Agreement is intended to require the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Liquidation Trust Assets.

4.7.    Tax Returns.  The Liquidation Trustee shall file such tax returns as may be required by federal, state or local taxing authorities and consistent with the treatment of the Liquidation Trust as a grantor trust for federal income tax purposes.  The Liquidation Trustee shall file federal income tax returns consistent with and pursuant to §1.671-4(a) of the Income Tax Regulations.

4.8.    Final Accounting of Liquidation Trustee.  The Liquidation Trustee shall within ninety days after the termination of the Liquidation Trust or his resignation, removal, liquidation or death (in which case, the obligation contained in this Section shall pass to the Liquidation Trustee's estate), render a final accounting containing at least the following information:

4.8.1.   A description of the Liquidation Trust Assets and their disposition;

4.8.2.   A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Liquidation Trust and the Liquidation Trust Assets during the Liquidation Trustee's term of service, including their source and nature;

4.8.3.   Separate entries for all receipts of principal and income;

4.8.4.   The ending balance of all Liquidation Trust Assets as of the date of the Liquidation Trustee's accounting, including the Cash balance on hand and the name and location of the depository where it is kept;

4.8.5.   All known liabilities owed by the Liquidation Trust; and

4.8.6.   The then current Register of Allowed and Disputed Claims.

The final accounting shall be filed with the Bankruptcy Court.


**ARTICLE V**
**APPOINTMENT, RESIGNATION/REMOVAL, COMPENSATION AND**
**LIABILITY OF LIQUIDATION TRUSTEE**

5.1.    Appointment.  The Liquidation Trustee is Kenneth L. Tepper, who shall act hereunder solely in his capacity as Liquidation Trustee of the GFGI Liquidation Trust and not otherwise.

5.2.    Resignation.  The Liquidation Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the Post-Confirmation Service List; provided, however, that such resignation shall not become effective until the appointment and Bankruptcy Court approval of a successor Liquidation Trustee in accordance with Section 5.4 hereof.  If a Liquidation Trustee resigns from its position hereunder, subject to a final accounting, such Liquidation Trustee, including its professionals, attorneys, and advisors, shall be entitled to all accrued but unpaid fees, expenses, and other compensation to the extent incurred, arising or relating to events occurring before such resignation, and any out-of-pocket

expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidation Trustee.

     5.3.   <u>Removal</u>. At any time upon the request of the Oversight Committee and/or a party-in-interest through a motion filed in the Bankruptcy Court, the Bankruptcy Court may remove the Liquidation Trustee for "Cause." For purposes of this Section 5.3, "Cause" shall mean: (a) an act of fraud, embezzlement, or theft in connection with the Liquidation Trustee's duties or in the course of his employment in such capacity, (b) the intentional wrongful damage to the Liquidation Trust Assets, (c) the intentional wrongful disclosure of confidential information of the Liquidation Trust resulting in material harm to the Liquidation Trust, (d) gross negligence by the Liquidation Trustee in connection with the performance of his duties under this Liquidation Trust Agreement, or (e) the unanimous decision of the Oversight Committee. Unless the Bankruptcy Court orders immediate removal, the Liquidation Trustee shall continue to serve until a successor Liquidation Trustee is appointed, and such appointment becomes effective, in accordance with Section 5.4 hereof. If the Liquidation Trustee is removed for Cause (other than pursuant to clause (e) above), such Liquidation Trustee shall not be entitled to any accrued but unpaid fees, expenses or other compensation under this Liquidation Trust Agreement or otherwise. If the Liquidation Trustee is unwilling or unable to serve (i) by virtue of his inability to perform his duties under this Liquidation Trust Agreement due to death, illness, or other physical or mental disability, or (ii) for any other reason whatsoever other than for Cause, subject to a final accounting, such Liquidation Trustee shall be entitled to all accrued but unpaid fees, expenses, and other compensation, to the extent incurred, arising or relating to events occurring before his removal or resignation, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidation Trustee.

     5.4.   <u>Appointment of Successor Liquidation Trustee</u>. In the event of a vacancy by reason of resignation of the Liquidation Trustee, the Oversight Committee shall designate the successor Liquidation Trustee, without further order of the Court, by providing 30 days written notice to the Post-Confirmation Service List provided that the successor Liquidation Trustee is appointed pursuant to the Liquidation Trust Agreement. In the event of vacancy for any other reason, including the death or immediate removal of the Liquidation Trustee or prospective vacancy by reason of removal, the Oversight Committee shall have the right to designate the successor Liquidation Trustee, by providing 30 days written notice to the Post-Confirmation Service List provided that no objection is interposed within such period and the successor Liquidation Trustee is appointed pursuant to the Liquidation Trust Agreement. In the event of an objection to the appointment of the successor Liquidation Trustee, the Bankruptcy Court shall be vested with final authority to appoint the successor Liquidation Trustee consistent with the best interests of the Beneficiaries of the Liquidation Trust. No successor Liquidation Trustee shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors. Every successor Liquidation Trustee shall execute, acknowledge and file with the Bankruptcy Court and deliver to the Post-Confirmation Service List an instrument in writing accepting such appointment hereunder, and thereupon such successor Liquidation Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.

5.5. <u>Continuity</u>. The death, resignation or removal of the Liquidation Trustee shall not terminate the Liquidation Trust or revoke any existing agency (other than any agency of such Liquidation Trustee as a Liquidation Trustee) created pursuant to the Liquidation Trust Agreement or invalidate any action theretofore taken by the Liquidation Trustee, and the successor Liquidation Trustee agrees that the provisions of the Liquidation Trust Agreement shall be binding on and inure to the benefit of each successor Liquidation Trustee and all his heirs and legal and personal representatives, successors or assigns. In the event of the resignation or removal of the Liquidation Trustee, such Liquidation Trustee shall (a) execute and deliver by the effective date of his resignation or removal such documents, instruments and other writings as may be reasonably required to effect the termination of such Liquidation Trustee's capacity under this Liquidation Trust Agreement and (b) assist and cooperate in effecting the assumption of such Liquidation Trustee's obligations and functions by the successor Liquidation Trustee. If, for any reason, the Liquidation Trustee fails to execute the documents described in clause (a) of the preceding sentence, the Bankruptcy Court may enter such orders as are necessary to effect termination of such Liquidation Trustee's capacity under this Liquidation Trust Agreement.

5.6. <u>Compensation</u>. The Liquidation Trustee shall be compensated as follows: (a) Twenty-five Thousand Dollars ($25,000) per month payable monthly, and (b) two percent (2%) of the Net Recovery (as defined below) payable at the conclusion of any litigation with respect to Temple-Inland Claims (as defined below). In addition, the Liquidation Trustee shall be entitled to reimbursement of reasonable out-of-pocket expenses incurred. Any Trust Professionals and any agents retained or utilized by the Liquidation Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable out-of-pocket expenses incurred. Compensation of the Liquidation Trustee and the Trust Professionals shall be paid out of the Wind-Down Reserve. After the Effective Date, the payment of the fees and expenses of the Liquidation Trustee and his agents, financial advisors, attorneys, consultants, independent contractors, representatives and other Trust Professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court, however, monthly invoices shall be served upon the Oversight Committee and Liquidating Trustee, and such fees and expenses shall be payable absent written objection within 30 days of service in accordance with the afore-referenced. If any portion of the monthly invoice is subject to objection, the undisputed portion shall be paid and the parties shall confer in good faith to resolve any remaining objections. Any successor Liquidation Trustee shall receive such reasonable compensation and reimbursement of expenses in the same manner as the initial Liquidation Trustee. "Net Recovery" means any amounts obtained by the Liquidation Trust on account of or with respect to any Rights of Action (as such term is defined below) relating solely to the Temple-Inland Claims (as defined in Article 6 below), less the amounts of all fees and costs paid by the Liquidation Trust to prosecute such claims.

5.7. <u>Exculpation</u>. From and after the Effective Date, the Liquidation Trustee and the Trust Professionals shall be exculpated by the Estates and all Holders of Claims or Interests from any and all claims or causes of action and assertions of liability arising out of their performance of the duties conferred upon them by the Plan, the Liquidation Trust Agreement, or any orders of the Bankruptcy Court, except to the extent an act constitutes bad faith, gross negligence, willful misconduct, or actual fraud. No holder of a Claim or Interest

or representative thereof shall have or pursue any claim or cause of action against the Liquidation Trustee or its professionals for taking any action in accordance with the Plan, the Liquidation Trust Agreement, or to implement the provisions of the Plan or any order of the Bankruptcy Court. Nothing in this provision shall be deemed to alter the provisions of the Liquidation Trust Agreement.

5.8.   <u>Indemnification</u>.  The Liquidation Trust shall indemnify and hold harmless (i) the Liquidation Trustee and (ii) the Trust Professionals (collectively, the "Trustee Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidation Trust Agreement, the Estates or the implementation or administration of the Plan, if the Trustee Indemnified Parties acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Beneficiaries, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful.  To the extent the Liquidation Trust indemnifies and holds harmless the Trustee Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidation Trustee in monitoring and participating in the defense of the claims giving rise to the right of indemnification shall be paid from the Liquidation Trust Assets.

5.9.   <u>Insurance</u>.  The Liquidation Trustee shall be authorized to obtain all reasonably necessary insurance coverage for himself, the Trust Professionals, the members of the Oversight Committee, the OC Professionals and Special Counsel, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Liquidation Trust, and (ii) the liabilities, duties and obligations of the Liquidation Trustee and the Trust Professionals (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the Liquidation Trustee, remain in effect for a reasonable period after the conclusion of the Liquidation Trustee's service.

5.10.  <u>Bond and Affidavit of No Conflicts</u>.   As a condition to qualifying as Liquidation Trustee hereunder, the Liquidation Trustee shall obtain a bond payable to the Liquidation Trust in the amount of $10 million and shall maintain a bond in the amount of 2 times cash on hand until the within Trust is dissolved, all cash and assets have been disbursed, and the Oversight Committee has confirmed that the Liquidation Trustee has concluded his (or her) duties and obligations hereunder.  In addition, the Liquidation Trustee shall file with the Bankruptcy Court an affidavit disclosing any connections with the major constituents in these cases, Tricadia, and potential defendants to any of the Rights of Action, and certifying that he has no conflicts of interest.

5.11.  <u>Reliance by Liquidation Trustee</u>.  The Liquidation Trustee may rely, and shall be fully protected in acting or refraining from acting if he relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Liquidation Trustee reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of cables, telecopies, e-mails and telexes, to have been sent by the proper party or parties, and the Liquidation Trustee may conclusively rely as to the truth of the statements and correctness of

the opinions expressed therein. The Liquidation Trustee may consult with counsel and other professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Liquidation Trustee. The Liquidation Trustee shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon. The Liquidation Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Liquidation Trust Agreement, the Plan, the Confirmation Order or any other document executed in connection therewith, and the Liquidation Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon. The Liquidation Trustee may rely upon the Debtors' filed schedules and statements of financial affairs and all other information provided by the Debtors or their representatives to the Liquidation Trustee concerning Claims filed against the Debtors, and their reconciliation and documents supporting such reconciliation.

5.12. <u>Reliance by Persons Dealing with the Liquidation Trustee</u>. In the absence of actual knowledge to the contrary, any person dealing with the Liquidation Trustee shall be entitled to rely on the authority of the Liquidation Trustee to act on behalf of the Liquidation Trust and shall have no obligation to inquire into the existence of such authority.


# ARTICLE VI
# OVERSIGHT COMMITTEE

6.1. <u>Establishment</u>. There is hereby established an Oversight Committee (the "Oversight Committee"), which shall have the responsibilities and duties, and shall consider certain actions, all as specified in this Liquidation Trust Agreement. The Liquidation Trustee shall report to the Oversight Committee in connection with the prosecution and settlement of any matters retained by the Liquation Trust and consistent with this Liquidation Trust Agreement.

6.2. <u>Composition</u>. The Oversight Committee shall consist of three members, as follows: one member (the "WTC Appointee") shall initially be appointed by WTC; one member (the "Creditor Appointee") shall initially be appointed by Tricadia Financials Restructuring Partners, Ltd. ("Tricadia"); and one member (the "Joint Appointee") shall initially be appointed by mutual agreement of the WTC Appointee and the Creditor Appointee. Tricadia agrees that it will not serve on the Oversight Committee or appoint a representative affiliated with Tricadia. Nothing herein shall preclude WTC from serving on the Oversight Committee. The WTC Appointee may be removed at any time by WTC, with or without cause. Any replacement of a WTC Appointee shall be appointed by WTC in its discretion; any replacement of a Creditor Appointee shall be appointed by unanimous agreement of the Liquidation Trustee, the WTC Appointee and Joint Appointee; and any replacement of a Joint Appointee shall be appointed by mutual agreement of the WTC Appointee and the Creditor Appointee (or its replacement as applicable).

6.3. <u>Rights, Obligations and Duties</u>. The Oversight Committee shall have the following rights, obligations and duties:

6.3.1. To appear and be heard in Bankruptcy Court, as necessary;

6.3.2. To articulate the Oversight Committee's position in the event the Liquidation Trustee brings a dispute with the Oversight Committee to the Bankruptcy Court for resolution, or the Oversight Committee concludes it should bring a dispute with the Liquidation Trustee to the Bankruptcy Court for resolution;

6.3.3. To consult with the Liquidation Trustee and its professionals regarding prosecution by the Liquidation Trustee of any Temple-Inland Claims and any Rights of Action, to approve the settlement of any Temple-Inland Claims and any Rights of Action where the amounts in controversy are individually in excess of One Hundred Thousand Dollars ($100,000), and to approve, settle, or compromise any disputed Claims filed or scheduled in these cases;

6.3.4. To remove the Liquidation Trustee as provided in Section 5.3 hereof;

6.3.5. To appoint a replacement Liquidation Trustee, including pursuant to Section 5.4 hereof; and

6.3.6. To remove or terminate the engagement of OC Professionals, Trust Professionals or Special Counsel.

Decisions of the Oversight Committee shall require the vote of a majority of the members of the Oversight Committee; provided, however, that decisions with respect to the matters set forth in Sections 6.3.2, 6.3.4, 6.3.5 and 6.3.6 shall require the unanimous vote of the members of the Oversight Committee. Meetings of the Oversight Committee may be called by any member thereof or by the Oversight Committee's attorneys, on such reasonable notice, and in such reasonable manner as the Oversight Committee may deem advisable. Any member of the Oversight Committee may designate a proxy from within his or her organization, or another member of the Committee, for all such meetings. The Oversight Committee may adopt such procedures with respect to its operation and governance, consistent with this Liquidation Trust Agreement, as it deems advisable.

6.4. **Appointment of OC Professionals and Special Counsel.** The WTC Appointee shall have the right to designate attorneys (and, if appropriate, a financial advisor) to represent the interests of and serve on behalf of the Oversight Committee (the "OC Professionals"), and to waive any conflicts of interest as deemed necessary or appropriate in its discretion. If applicable, the OC Professionals shall coordinate and cooperate with the Trust Professionals in the time leading up to the filing of any complaint with respect to, and the during the prosecution of, any Temple-Inland Claims, in a support role (but not as lead counsel to the Liquidation Trustee) to insure the efficient communication of information and to assist in the preparation and prosecution of any complaint regarding the Temple-Inland Claims. In addition, the WTC Appointee shall have the right to designate special counsel ("Special Counsel") to the Liquidation Trustee with respect to prosecution and defense of all Rights of Action excluding the Temple-Inland Claims, and motions objecting to and/or seeking to recharacterize, reclassify or subordinate Claims filed against any of the Debtors or their

15

Estates (including motions for estimation or turnover, and related discovery motions) in furtherance of the Liquidation Trustee's powers under Article 4 of this Liquidating Trust Agreement. The OC Professionals, Special Counsel and Trust Professionals shall use their commercially reasonable efforts to cooperate with each other and avoid duplication of services. For purposes hereof, "Temple-Inland Claims" shall mean all claims related to the divestiture of GFG and Forestar Real Estate Group, Inc. ("Forestar") from Temple-Inland (the "Spin-Off") and all claims against Temple-Inland for any tax refunds, tax benefits or tax related entitlements whatsoever including, but not limited to, net operating losses, whether or not related to the Spin-Off.

6.5.    Compensation.    The members of the Oversight Committee shall be compensated for their reasonable fees and expenses. The OC Professionals and Special Counsel shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable out-of-pocket expenses incurred. Compensation of the members of the Oversight Committee, the OC Professionals and Special Counsel shall be paid out of the Wind-Down Reserve in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court, however, monthly invoices shall be served upon the Liquidating Trustee and Oversight Committee, and such fees and expenses shall be payable absent written objection within 30 days of service in accordance with the afore-referenced. If any portion of the monthly invoice is subject to objection, the undisputed portion shall be paid and the parties shall confer in good faith to resolve any remaining objections.

6.6.    Disputes.    Any disputes between or among the Oversight Committee, its members and the Liquidation Trustee shall be resolved by the Bankruptcy Court, if so requested upon motion by any of such parties.

6.7.    Exculpation.    From and after the Effective Date, the members of the Oversight Committee, the OC Professionals, Dennis Faulkner, individually and in his capacity as Chief Restructuring Officer and director of the Debtors ("Faulkner"), and the Debtors' professionals Lain Faulkner & Co. and Haynes and Boone, LLP (the "Debtors' Professionals") shall be exculpated by the Estates and all Holders of Claims or Interests from any and all claims or causes of action and assertions of liability arising out of their performance of the duties conferred upon them by the Plan, the Liquidation Trust Agreement, or any orders of the Bankruptcy Court, except to the extent an act constitutes bad faith, gross negligence, willful misconduct, or actual fraud. No holder of a Claim or Interest or representative thereof shall have or pursue any claim or cause of action against the members of the Oversight Committee, the OC Professionals, Faulkner, or the Debtors' Professionals for taking any action in accordance with the Plan, the Liquidation Trust Agreement, or to implement the provisions of the Plan or any order of the Bankruptcy Court. Nothing in this provision shall be deemed to alter the provisions of the Liquidation Trust Agreement.

6.8.    Indemnification.    The Liquidation Trust shall indemnify and hold harmless (i) the members of the Oversight Committee; (ii) the OC Professionals; (iii) Faulkner; and (iv) the Debtors' Professionals (collectively, the "OC/Debtor Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidation Trust

16

Agreement, the Estates or the implementation or administration of the Plan, if the OC/Debtor Indemnified Parties acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Beneficiaries, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful. To the extent the Liquidation Trust indemnifies and holds harmless the OC/Debtor Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidation Trustee in monitoring and participating in the defense of the claims giving rise to the right of indemnification shall be paid from the Liquidation Trust Assets.

6.9. <u>Dissolution</u>. Upon dissolution of the Liquidation Trust, the Oversight Committee shall be dissolved automatically, and its members will be released and discharged from all duties and obligations arising from or related to the Liquidation Trust.

# ARTICLE VII
# BENEFICIARIES

7.1. <u>Interest Beneficial Only</u>. The ownership of a beneficial interest in the Liquidation Trust shall not entitle any Beneficiary under the Liquidation Trust to any title in or to the Liquidation Trust Assets or to any right to call for a partition or division of the Liquidation Trust Assets or to require an accounting, except as specifically provided by this Liquidation Trust Agreement.

7.2. <u>Evidence of Beneficial Interest</u>. Ownership of a beneficial interest in the Liquidation Trust Assets shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee.

7.3. <u>Registration of Beneficial Interest</u>. The Liquidation Trustee shall cause the Register to be kept at his office or at such other place or places as may be designated by the Liquidation Trustee from time to time. The Register shall reflect the ownership of the beneficial interests of the Beneficiaries.

7.4. <u>Absolute Owners</u>. The Liquidation Trustee may deem and treat the Beneficiaries reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving Distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

7.5. <u>Standing of Beneficiary</u>. Except as expressly provided in the Liquidation Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Liquidation Trustee) upon or with respect to the Liquidation Trust Assets.

7.6. <u>Non-Transferability</u>. Beneficial interests in the Liquidation Trust shall not be subject to assignment or alienation, either voluntary or involuntary, other than by operation of

law.  A Beneficiary shall not be entitled to sell, assign, exchange, pledge or otherwise transfer or convey its beneficial interest in the Liquidation Trust or any right or interest therein.

# ARTICLE VIII
# TAXES

8.1.    <u>Income Tax Status</u>.  Consistent with the Revenue Procedure 94-45, 1994-28 I.E. 124, the Liquidation Trust shall be treated as a Liquidation trust pursuant to the Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Sections 671-677 of the Internal Revenue Code.  As such, the Beneficiaries will be treated as the grantors of the Liquidation Trust and the deemed owners of the Liquidation Trust Assets.  All items of income, deductions and credit loss of the Liquidation Trust shall be allocated for federal income tax purposes to the Beneficiaries based on their respective interests in the Liquidation Trust, including Beneficiaries holding Disputed Claims, in such manner as the Liquidation Trustee deems reasonable and appropriate.  The Liquidation Trustee will consistently value the Liquidation Trust Assets and such valuation will be used for all federal income tax purposes by the Liquidation Trust and the Beneficiaries.

8.2.    <u>Tax Returns</u>.  The Liquidation Trustee shall make such timely filing with the Internal Revenue Service, other taxing authorities, and the Beneficiaries as required under Treas. Reg. § 1.671.4 or other applicable law.

8.3.    <u>Withholding of Taxes Related to Liquidation Trust Operations</u>.  To the extent that the operation of the Liquidation Trust or the liquidation of the Liquidation Trust Assets creates a tax liability in excess of applicable net operating losses, the Liquidation Trust shall promptly pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Liquidation Trust payable from the Liquidation Trust Assets.  The Liquidation Trustee may reserve a sum, the amount of which shall be determined by the Liquidation Trustee in his sole discretion, sufficient to pay any accrued or potential tax liability of the Liquidation Trust.  In the exercise of his discretion and judgment, the Liquidation Trustee may enter into agreements with taxing authorities or other governmental units settling, compromising, or otherwise establishing the amount of any tax liability of the Liquidation Trust.  The foregoing notwithstanding, consistent with its status as a grantor trust, the Beneficiaries shall be responsible for the payment of federal income taxes on their allocable portion of any taxable income of the Liquidation Trust.

# ARTICLE IX
# MISCELLANEOUS PROVISIONS

9.1.    <u>Descriptive Headings</u>.  The headings contained in this Liquidation Trust Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Liquidation Trust Agreement.

9.2.    Amendment.  This Liquidation Trust Agreement may not be amended except by an instrument executed by the Liquidation Trustee with the approval of the Bankruptcy Court following the Effective Date.

9.3.    Governing Law.  This Liquidation Trust Agreement shall be governed by and construed in accordance with the laws of the State of Texas without regard to the rules of conflict of laws of the State of Texas or any other jurisdiction.

9.4.    Counterparts; Effectiveness.    This Liquidation Trust Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.  This Liquidation Trust Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

9.5.    Severability; Validity.  If any provision of this Liquidation Trust Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Liquidation Trust Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Liquidation Trust Agreement are agreed to be severable.

9.6.    No Waiver by Liquidation Trustee.  No failure by the Liquidation Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

9.7.    Preservation of Privilege and Defenses.  In connection with the rights, claims, and Rights of Action and any objections to Disputed Claims prosecuted or resolved by the Liquidation Trustee in accordance with the Plan (including, without limitation, all defenses, counterclaims, setoffs and recoupments belonging to the Debtors), any applicable privilege or immunity of the Debtors, including, without limitation, any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral) shall vest in the Liquidation Trust.

9.8.    Prevailing Party.  If the Liquidation Trust is the prevailing party in a dispute regarding the provisions of this Liquidation Trust Agreement or the enforcement thereof, the Liquidation Trust shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

9.9.    No Bond.  Notwithstanding any state law to the contrary, as except as required under Section 5.10 above, the Liquidation Trustee (including any successor Liquidation Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

9.10.    Notices.  Any notice or other communication hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of a facsimile transmission, (b) confirmed delivery by a standard overnight carrier or when delivered by hand, or (c) the expiration of five (5) Business Days after the day when mailed by registered or certified mail

(postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

>*If the Liquidation Trustee, to:*

> Kenneth L. Tepper, Esq.
> c/o Kildare Capital, Inc.
> 555 E. Lancaster Avenue
> Suite 540
> Radnor, PA 19087
> E-mail: ktepper@kildarecapital.com

> With a copy to:

and

> If to a Beneficiary:

> To the name and address set forth in the Register or on the service list used for service of the Plan.

9.11.    Irrevocability. The Liquidation Trust is irrevocable.

9.12.    Relationship to Plan.   The Liquidation Trustee shall have full power and authority to take any action consistent with the purposes and provisions of the Plan.  However, in the event that the provisions of this Liquidation Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

9.13.    Retention of Jurisdiction.   As provided in Article XII of the Plan, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, but not limited to, interpreting and implementing the provisions of this Liquidation Trust Agreement.

9.14.    Successors or Assigns.  The terms of the Liquidation Trust Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Liquidation Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized representatives all as of the date first above written.

GUARANTY FINANCIAL GROUP INC.,
(on its own behalf and on behalf of all Debtors)


By: _____
Dennis Faulkner
Chief Restructuring Officer for the Debtors


KENNETH L. TEPPER, SOLELY IN HIS
CAPACITY AS LIQUIDATION TRUSTEE OF
THE GFGI LIQUIDATION TRUST

Signature : _____

d-1919232

GUARANTY FINANCIAL GROUP INC.,
(on its own behalf and on behalf of all Debtors)

By: _____
Dennis Faulkner
Chief Restructuring Officer for the Debtors


KENNETH L. TEPPER, SOLELY IN HIS
CAPACITY AS LIQUIDATION TRUSTEE OF
THE GFGI LIQUIDATION TRUST

Signature :_____




AGREED AS TO FORM!

DENNIS FAULKNER
CRO FOR THE DEBTORS


d-1919232

21

GUARANTY FINANCIAL GROUP INC.,
(on its own behalf and on behalf of all Debtors)


By: _____
Dennis Faulkner
Chief Restructuring Officer for the Debtors


KENNETH L. TEPPER, SOLELY IN HIS
CAPACITY AS LIQUIDATION TRUSTEE OF
THE GFGI LIQUIDATION TRUST


Signature :_____


AGREED AS TO FORM:


_____
IAN PECK
COUNSEL TO THE DEBTORS

21

GUARANTY FINANCIAL GROUP INC.,
(on its own behalf and on behalf of all Debtors)


By: _____
Dennis Faulkner
Chief Restructuring Officer for the Debtors


KENNETH L. TEPPER, SOLELY IN HIS
CAPACITY AS LIQUIDATION TRUSTEE OF
THE GFGI LIQUIDATION TRUST


Signature :_____

Acknowledge /Agree to form:

Douglas Spenford, as
Counsel Wilmath Trust

21

GUARANTY FINANCIAL GROUP INC.,
(on its own behalf and on behalf of all Debtors)


By: _____
Dennis Faulkner
Chief Restructuring Officer for the Debtors


KENNETH L. TEPPER, SOLELY IN HIS
CAPACITY AS LIQUIDATION TRUSTEE OF
THE GFGI LIQUIDATION TRUST


Signature :_____


Acknowleged / Agreed as to
form :

*[signature]*

Gerard S. Catalonello, Cansel
to TRicadia Financials
Restructuring Partners, Ltd.